**UNITED STATES of America,
Appellee,**

v.

**Roy Lewis MERCURRIS, also known as Roy Rogers, Defendant–Appellant.**

**Docket No. 96–1688.**

United States Court of Appeals, Second Circuit.

Argued May 19, 1999.

Decided Sept. 8, 1999.

M. Katherine Baird, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, of counsel), for Appellee.

Beverly Van Ness, New York, New York, for Appellant.

Before: McLAUGHLIN, JACOBS, Circuit Judges, and McMAHON,* District Judge.

McLAUGHLIN, Circuit Judge:

## BACKGROUND

Mercurris, a Guyanese national, accumulated six convictions for the criminal sale of marijuana in New York State courts between 1982 and 1984. In late 1985 he was deported to Guyana. About two years later, Mercurris illegally re-entered the United States. He was arrested on March 18, 1993. After initial attempts to prosecute him for illegal re-entry resulted in a mistrial, the Immigration and Naturalization Service ("INS") attempted to deport Mercurris a second time. However, he refused to sign the proper travel document or board the Guyana-bound plane at Kennedy Airport.

* The Honorable Colleen McMahon, of the United States District Court for the Southern District of New York, sitting by designation.

On June 24, 1996, Mercurris was indicted on two counts in the United States District Court for the Southern District of New York (Sotomayor, *J.*). Count One charged Mercurris with willful failure to depart the country or hampering his own deportation in violation of 8 U.S.C. § 1252(e) (1990) (current version at 8 U.S.C. § 1253(a) (1996)). Count Two charged him with illegal re-entry into the United States after deportation in violation of 8 U.S.C. § 1326. After a three-day trial in June 1996, a jury convicted Mercurris on both counts.

The United States Probation Office prepared a Presentence Report ("PSR"). The PSR calculated a total offense level of 24 under the sentencing guidelines. This represented a base offense level of 8 plus a 16–level enhancement applicable to aliens who illegally re-enter the United States following conviction of an aggravated felony. *See* U.S.S.G. § 2L1.2(a) & (b)(2) (1995 ed.). The aggravated felony enhancement ratcheted Mercurris' sentencing range from 6–12 months to 63–78 months imprisonment.

Mercurris objected to the application of the aggravated felony enhancement. He argued that the enhancement did not apply because his marijuana sales convictions were not punishable for more than a year under New York state law and were therefore not "aggravated felonies" within the meaning of § 2L1.2(b)(2). The government responded that, while New York law classified Mercurris' drug offenses as misdemeanors, the aggravated felony enhancement applied because Mercurris' marijuana sales offenses were punishable as felonies under federal law.

After hearing oral argument from the parties on October 17, 1996, the district court rejected Mercurris' argument that the enhancement did not apply because the offenses were misdemeanors under New

York state law. Instead, it ruled that "the issue is whether the charge and the conduct underlying the charge fit within a felony definition under federal law." Because Mercurris' marijuana sales offenses would be punishable as felonies under federal law, the district court concluded that the enhancement applied and sentenced him to 63 months imprisonment and a three-year term of supervised release. The supervised release term included a special condition that Mercurris cooperate with the INS in deportation proceedings.

On appeal, Mercurris challenges only the aggravated felony enhancement, arguing once again that his state convictions are not "aggravated felonies" within the meaning of U.S.S.G. § 2L1.2(b)(2). He does not challenge his conviction. During the pendency of this appeal, Mercurris completed his prison term and was deported. Accordingly, the government argues that this appeal is moot. We agree and dismiss for lack of jurisdiction.

## DISCUSSION

■■■ A case becomes moot when it no longer satisfies the "case-or-controversy" requirement of Article III, Section 2 of the Constitution. *See Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). In order to satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision. *Id.*

■■■ A criminal case does not necessarily become moot when the convict finishes serving the sentence. Instead, the case will remain a live case or controversy if there exists "some concrete and continuing injury" or "collateral consequence" resulting from the conviction. *Id.*

In cases involving a challenge to the criminal conviction itself, the Supreme Court "has been willing to *presume* the existence of collateral consequences sufficient to satisfy the case or controversy requirement; or in a practice that it views

as 'effectively the same,' the Court has been willing 'to count collateral consequences that are remote and unlikely to occur.' " *United States v. Probber,* 170 F.3d 345, 348 (2d Cir.1999) (emphasis in original) (quoting *Spencer,* 523 U.S. at 8, 118 S.Ct. 978). This presumption of collateral consequences has been justified on the theory that "most criminal convictions do in fact entail adverse collateral legal consequences," *Sibron v. New York,* 392 U.S. 40, 55, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), in that convicted criminals often face certain "civil disabilities" as a result of their conviction. *Lane v. Williams,* 455 U.S. 624, 632 n. 13, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982). Examples of such disabilities include being "barred from holding certain offices, voting in state elections, and serving as a juror." *Id.*

■■■ Mercurris acknowledges that he cannot rely upon the presumption of collateral consequences arising from a criminal conviction because he does not challenge his conviction—he contests only a sentencing enhancement. Nevertheless, Mercurris urges us to presume the existence of collateral consequences sufficient to satisfy Article III's case-or-controversy requirement. We decline to do so.

Mercurris' argument is foreclosed by the Supreme Court's recent decision in *Spencer.* In that case, the Court expressed a distinct distaste for presuming collateral consequences, going so far as to criticize its own decisions establishing the presumption in the context of criminal convictions. *Spencer,* 523 U.S. at 8–12, 118 S.Ct. 978. The Court declined to extend the presumption to a case involving a habeas petitioner's challenge to a parole revocation where the petitioner had finished serving his entire sentence. *See id.* at 14, 118 S.Ct. 978. Relying heavily on its prior decision in *Lane v. Williams,* 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982), the Court explained that parole revocations do not ordinarily result in the sort of civil disabilities that justify the presumption when dealing with a criminal conviction.

*See Spencer,* 523 U.S. at 12–13, 118 S.Ct. 978.

In this case, just as in *Spencer,* Mercurris does not proffer, nor are we aware of any civil disabilities which attend the longer sentence he served as a result of the district court's application of the aggravated felony enhancement. Accordingly, we decline to adopt a presumption of collateral consequences.

We are aware that one case since *Spencer* has held that a challenge to the length of an expired sentence was not moot because "the length of a sentence may have an important collateral effect or consequence on future sentencing." *See United States v. Rivera,* 164 F.3d 130, 132 (2d Cir.1999) (citations omitted). However, the *Rivera* panel relied on pre-*Spencer* cases and, as we subsequently pointed out, did not consider *Spencer*'s effect on the issue before it. *See Probber,* 170 F.3d at 348 n. 7. The *Spencer* Court explicitly rejected as too speculative the argument that the parole revocation "could be used to increase his sentence in a future proceeding." *Spencer,* 523 U.S. at 15, 118 S.Ct. 978. This collateral consequence was rejected "because it was contingent upon respondents' violating the law, being caught and convicted. 'Respondents themselves are able—and indeed required by law—to prevent such a possibility from occurring.' " *Id.* (quoting *Lane,* 455 U.S. at 633 n. 13, 102 S.Ct. 1322). Accordingly, *Rivera* and the pre-*Spencer* cases relied on in *Rivera, see, e.g., United States v. Kassar,* 47 F.3d 562, 565 (2d Cir.1995), are no longer controlling.

■ Mercurris' fallback contention is that we should presume that collateral consequences will result not merely from his enhanced sentence, but from the district court's underlying determination that his marijuana sales convictions constitute aggravated felonies for purposes of the sentencing enhancement. He points out that aggravated felonies are the most serious category of crimes under the immigration law and warrant the most severe penalty

enhancement under the guidelines. As already noted, however, a finding of collateral consequences cannot be based on the speculation that an individual will receive an enhanced sentence in a future sentencing proceeding in connection with a crime he has not yet committed.

■ There being no presumption of collateral consequences, Mercurris must bear the burden of demonstrating some "concrete and continuing injury" sufficient to create an Article III case or controversy. *See Spencer,* 523 U.S. at 7, 14, 118 S.Ct. 978; *see also Probber,* 170 F.3d at 348. This he has failed to do.

Mercurris argues only that as an alien, the district court's finding that he is an aggravated felon could subject him to various adverse consequences under the immigration laws if he ever legally returns to the United States in the future. He notes, for example, that aggravated felons are ineligible for political asylum and United States citizenship.

Mercurris' argument is unpersuasive. Mercurris concedes that his marijuana sales convictions constitute "controlled substance offenses," rendering him inadmissible to the United States on a wholly independent ground, even if they are not deemed "aggravated felonies." *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II) & (a)(2)(C). Thus, since Mercurris has only a quixotic chance of legally returning to the United States, the possibility that his aggravated felon status could make a difference to him under the immigration statutes is too speculative to create an Article III case or controversy. *See Spencer,* 523 U.S. at 14–16, 118 S.Ct. 978. Moreover, even if Mercurris were able to legally return to the United States—notwithstanding his multiple drug offenses—Mercurris has failed to demonstrate how the district court's aggravated felony finding in the *sentencing* context could render him ineligible for asylum and other benefits in the *immigration* context. We see no reason to believe that the district court's classification of Mercur-

ris' offenses for sentencing purposes would bind the INS in a future immigration proceeding. *Cf. United States v. Pornes–Garcia*, 171 F.3d 142, 147 (2d Cir.1999) (noting that the meaning of the phrase "aggravated felony" for purposes of the immigration laws is governed by a different legal standard and is driven by different concerns than the meaning of the same phrase "[i]n the very different context of criminal sentencing"). In our view, an INS determination of Mercurris' status would be "more directly influenced by[ ] the underlying conduct that formed the basis of [Mercurris' convictions]." *Spencer*, 523 U.S. at 13, 118 S.Ct. 978 (quoting *Lane*, 455 U.S. at 632–33, 102 S.Ct. 1322).

## CONCLUSION

We have considered Mercurris' remaining contentions and find them to be without merit. For the foregoing reasons, this appeal is Dismissed for lack of jurisdiction.