**UNITED STATES of America,
Respondent,**

v.

**Namik ERDIL, Petitioner.**

**No. 00CV6643(ADS).**

United States District Court,
E.D. New York.

Jan. 11, 2005.

Namik Erdil, Buhanive, Turkey, Petitioner Pro Se.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, by Burton T. Ryan, Jr., Assistant United States Attorney, Central Islip, NY.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Namik Erdil ("Erdil" or the "petitioner") by petition dated November 2, 2000, sought to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In a prior decision rendered on November 15, 2002 (*United States v. Erdil*, 230 F.Supp.2d 292 (E.D.N.Y.2002)) this court denied all parts of the petition except the issue of cooperation. The Court reserved decision on the petitioner's contention that the Government acted in bad faith when it declined to give him a cooperation 5K1.1 letter. The Court directed the Government to submit an affidavit setting forth, among other things, the following facts with regard to Erdil's cooperation:

(1) the details of Erdil's actual assistance rendered to the Government and the results of such assistance, if any; (2) the status of the investigation before and after Erdil provided his assistance; (3) the dates the investigation began and ended; (4) whether and when any other individuals have rendered assistance of similar nature to that offered by Erdil and have been denied a 5K1.1 letter; and (5) whether any individuals entered into similar cooperation agreements and having similar results have been issued a 5K1.1 letter.

In response to this Court's direction on April 20, 2004, the Government served and filed the "Government's Supplemental Memorandum of Law In Opposition to Petitioner's 2255 Motion." The Government's memorandum was served on the

petitioner at an address in Buhanive, Turkey.

The Court notes that the petitioner has interposed no opposition to the Government's Supplemental Memorandum.

## I. BACKGROUND

The facts in this case were set forth in detail in the Court's prior decision. For the purpose of this decision, the Court will relate only the pertinent facts. On February 19, 1999, Erdil, a citizen of Turkey, pled guilty to two counts which charged him with conspiracy to commit bank fraud, credit card fraud, money laundering, and bank fraud. Erdil entered into a cooperation agreement with the Government in which Erdil was promised a 5K1.1 letter in return for his "substantial assistance." On September 29, 1999, the Government notified Erdil that because the information he supplied to the Government did not rise to the level of "substantial assistance," it would not move for a downward departure pursuant to U.S.S.G. § 5K1.1.

On November 5, 1999, Erdil was sentenced by this Court to 57 months imprisonment, with credit for time already served. The Court further imposed a term of five years of supervised release to commence upon his release from prison. In addition, the Court ordered Erdil, upon release, to pay restitution in the amount of $424,722.31 to be paid at the rate of 10% of Erdil's gross monthly income until the amount of restitution is paid in full.

Pursuant to 28 U.S.C. § 2255, Erdil filed a petition with this Court to vacate, set aside, or correct his sentence on the grounds that (1) his counsel was unconstitutionally ineffective in failing to (a) inform him of his rights under the consular notification provision of the Vienna Convention on Consular Relations ("Vienna Convention"); (b) challenge the amount of fraudulent money charged against him, in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and (c) challenge the indictment for money laundering pursuant to 18 U.S.C. § 1956; and (2) the Government acted in bad faith when it declined to make a 5K1.1 downward departure motion at his sentencing. In addition, Erdil claimed that the Court failed to consider his ability to pay before ordering him to pay $424,722.31 in restitution.

As stated above, in the November 15, 2002 decision, the Court dismissed all the petitioner's contentions except the issue of cooperation and the decision of the Government to decline to issue a 5K1.1 letter to him.

## II. DISCUSSION

### A. The Mootness Issue

■ Although not directly raised by the Government, the Court finds that, under the facts and circumstances of this case, the sole remaining question, the cooperation issue, is moot.

■ A case becomes moot when it no longer satisfies the "case or controversy" requirement of Article III, Section 2 of the United States Constitution. In *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), the Supreme Court stated that the case or controversy requirement "subsists through all stages of federal judicial proceedings, trial and appellate.... The parties must continue to have a personal stake in the outcome of the lawsuit." *Id.* at 7, 118 S.Ct. 978. (Quotation and citation omitted). The Supreme Court went on to add that "[t]his means that throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (quotation omitted).

An incarcerated or parolee's habeas petition would always satisfy the case or controversy requirement because incarceration or being on parole constitutes a concrete injury. However, "[o]nce the convict's sentence has expired ... some concrete and continuing injury other than the now-ended incarceration or parole—some collateral consequence of the conviction must exist if the suit is to be maintained." *Id.* (quotation omitted). Referring to the Supreme Court's decision in *Spencer,* the Second Circuit stated in *United States v. Mercurris,* 192 F.3d 290 (2d Cir.1999) that "[i]n that case, the Court expressed a distinct distaste for presuming collateral consequences, going so far as to criticize its own decisions establishing the presumption in the context of criminal convictions." *Id.* at 293. In fact, the Second Circuit in *Mercurris* held that "[t]here being no presumption of collateral consequences, Mercurris must bear the burden of demonstrating some 'concrete and continuing injury' sufficient to create an Article III case or controversy." *Id.* at 294. *See also United States v. Suleiman,* 208 F.3d 32 (2d Cir.2000); *Ramirez v. INS,* 86 F.Supp.2d 301 (S.D.N.Y.2000).

In this case, the Government advised the Court that in December 2002, Erdil was released from federal prison and deported to Turkey. He is currently under "inactive supervised release." (Supp. Memo at 5). The Court finds that, as a result of his deportation, Erdil's habeas petition is moot. In *Mercurris,* the Second Circuit commented on the status of a defendant who completed his prison term and was deported.

Mercurris acknowledges that he cannot rely upon the presumption of collateral consequences arising from a criminal conviction—he contests only a sentencing enhancement. Nevertheless, Mercurris urges us to presume the existence of collateral consequences sufficient to satisfy Article III's case-or-controversy requirement. We decline to do so.

Mercurris' argument is foreclosed by the Supreme Court's recent decision in *Spencer.* In that case, the Court expressed a distinct distaste for presuming collateral consequences, going so far as to criticize its own decisions establishing the presumption in the context of criminal convictions. *Spencer,* 523 U.S. at 8–12, 118 S.Ct. 978.

. . . . .

Thus, since Mercurris has only a quixotic chance of legally returning to the United States, the possibility that his aggravated felon status could make a difference to him under the immigration statutes is too speculative to create an Article III case or controversy. *See Spencer,* 523 U.S. at 14–16, 118 S.Ct. 978, 140 L.Ed.2d 43.

*See also United States v. Suleiman,* 208 F.3d 32, 37 (2d Cir.2000) ("We recently ruled that a defendant's completion of his prison term and his subsequent deportation mooted his appeal of the sentence.")

Deportation may only render a petition moot if "there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *Perez v. Greiner,* 296 F.3d 123, 125 (2d Cir.2002) (quoting *Sibron v. New York,* 392 U.S. 40, 47, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)). Collateral consequences include being "permanently barred from re-entry to the United States." *Soto v. Parrotti,* 2004 U.S. Dist. LEXIS 8080 (S.D.N.Y.2004). "Such a barrier to reentry clearly would suffice to prevent Perez's habeas petition from being mooted." *Perez,* 296 F.3d at 126.

Here, the petitioner is only challenging his sentence, and not his conviction. The petitioner is barred from this country on

the basis of his conviction and not the length of his sentence. Thus, the petitioner's current challenge has no affect on his admissibility and cannot be consider to have a collateral consequence. Accordingly, with regard to a deported convicted alien felon, the sentencing cooperation issue raised by him is moot. However, to complete the record, the Court will determine the cooperation and the "fugitive" issues on the merits.

### B. *The "Fugitive" Issue*

█ The Government contends that the petitioner's failure to make any payments toward the restitution order in the sum of $424,722.31 "is equitably analogous to that of a fugitive and . . . the fugitive dismissal rule would apply." Supp. Memo at 6.

The "fugitive" rule, insofar as it has been raised by the Government, was set forth by the United States Supreme Court in *Ortega–Rodriguez v. United States,* 507 U.S. 234, 239, 240, 113 S.Ct. 1199, 1203, 122 L.Ed.2d 581 (1993), as follows:

It has been settled for well over a century that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal. The Supreme Court applied this rule for the first time in *Smith v. United States,* 94 U.S. 97, 4 Otto 97, 24 L.Ed. 32 (1876), to an escaped defendant who remained at large when his petition arose before the Court. Under these circumstances, the Court explained, there could be no assurance that any judgment it issued would prove enforceable. The Court concluded that it is "clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party, suing out the writ, is where he can be madè to respond to any judgment we may render." *Ibid.* On two subsequent occasions, we gave the same rationale for dismissals based

on the fugitive status of defendants while their cases were pending before our Court. *Bonahan v. Nebraska,* 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854 (1887); *Eisler v. United States,* 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949).

The Court has not found any case in which a convicted alien felon who is deported and fails to pay restitution is a "fugitive" and it declines to so rule. The two cases presented by the Government concern a convicted felon who fails to surrender for incarceration and absconds (*United States v. Awadalla,* 357 F.3d 243 (2d Cir.2004)) and a defendant who jumped bail and remained a true fugitive for seven years (*United States v. Persico,* 853 F.2d 134, 138 (2d Cir.1988)). These situations are a far cry from that of a deported alien felon who fails to pay restitution. The Government's contention that, because Erdil was deported and failed to pay restitution he does not have the right to use the judicial process, is rejected.

### C. *The Cooperation Issue*

█ The Court now addresses the merits of the petitioner's contention that the Government acted in bad faith when it declined to issue a 5K1.1 letter to him for use in a downward departure motion at sentencing. In his petition, Erdil asserted that "there was a very specific 'promise' made to me, that in return for my substantial assistance, the Government would make a 5K1.1 motion to the Court to permit the Judge to depart below my guideline level." (Pet. at 10). Further, Erdil contended that the Government denied this right to him based on its "bad faith" in that the Government "had an ulterior motive to deny the promised relief."

█ "Cooperation agreements, like plea bargains, are interpreted according to the principles of contract law." *United States v. Khan,* 920 F.2d 1100, 1105 (2d

Cir.1990), *cert. denied,* 499 U.S. 969, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991). Because there is an implied obligation of good faith and fair dealing in every contract, the prosecution's determination that it is dissatisfied with the defendant's performance under the cooperation agreement may not be reached dishonestly or in bad faith. *Id.* Thus, where the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the sole discretion of the prosecutor, that discretion is limited by the requirement that it be exercised fairly and in good faith. *Id.*

In its prior decision, the Court found that the Government provided no details to dispute the veracity of Erdil's claim of cooperation. Therefore, the Court was unable to conclude, at that time, whether the Government acted in good faith in declining to issue the 5K1.1 letter. The Government was directed to expand the reasons, by way of an affidavit, for its decision to decline to issue a 5K1.1 letter. The Government has now done so.

In an affidavit by the former Assistant to the Special Agent in charge of the New York Field Office for the United States Secret Service, it was set forth in detail, that:

1. On April 30, 1998, Horea Opran and Namik Erdil were indicted.

2. Opran was arrested and pled guilty on October 30, 19998. He agreed to cooperate; gave information already obtained from co-defendants; received no 5K1.1 letter; and was sentenced to 78 months with a direction to pay restitution of 2.6 million.

3. Meanwhile, Erdil fled to Turkey; returned on October 16, 1998; and was arrested.

4. On January 12, 1999, Erdil agreed to proffer to the Government and admitted his criminal activity and his participation in Opran's check kiting scheme. At that time, Erdil identified two individuals, Kucuk and Gumustas. However, both of these persons had already been prosecuted.

5. On February 19, 1999, Erdil pled guilty pursuant to a cooperation agreement.

6. After his plea, in response to a request by the Government, Erdil's counsel indicated that he did not have additional information to proffer.

7. As a result of this failure to provide any further information, on September 29, 1999, the Government notified Erdil in writing that the Government could not move for a downward departure as Erdil had not been able to offer "substantial assistance" in the investigation or prosecution of other persons. At that time, no objection was made to this letter. Nor was there any request for a hearing to challenge the Government's assessment of Erdil's cooperation.

According to the affidavit of the Special Agent, "Erdil's assistance, provided late in the investigation, after he had originally fled to Turkey, was of no value to the Government. He only provided information on co-conspirators who had already been prosecuted." The Special Agent concluded that "Erdil did not provide any actual assistance in the furtherance of this investigation," and his cooperation "provided no new information that led to any further arrests or developments in this investigation."

Erdil's assertion that the decision by the Government not to issue a § 5K1.1 letter to him was done in bad faith, is without merit. The cooperation agreement provided that "the officer's good faith assessment of the value, truthfulness, completeness and accuracy of the cooperation shall be binding on him." (Cooperation Agreement at 5). The terms of the agreement make it

**64**

clear that the Government had considerable discretion as to whether to issue a 5K1.1 letter, based on whether·it considered Erdil to have rendered "substantial assistance" to law enforcement authorities.

The Second Circuit has reviewed such alleged "bad faith" claims as to cooperation agreements and determined that prosecutors have broad latitude under such circumstances. *See, e.g., United States v. Resto*, 74 F.3d 22 (2d Cir.1996); *United States v. Knights*, 968 F.2d 1483, 1487 (2d Cir.1992); *United States v. Rexach*, 896 F.2d 710, 713 (2d Cir.) *cert. denied*, 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990). As stated in *Knights:*

> Because the prosecution often is in the best position to evaluate the quality of a defendant's cooperation and to decide whether to make a substantial-assistance motion, this decision, like other prosecutorial determinations, may be subject to only limited review. *Knights*, 968 F.2d at 1487.

In this case, the Court finds that the Government's decision not to move for a downward departure was fair and was made in good faith. While Erdil did provide some help to the Government, it consisted of information already known and failed to assist the prosecutors with regard to any other person. As stated in *Rexach:*

> [W]here the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the judgment of the prosecutor, the prosecutor may reject the defendant's performance provided he or she is honestly dissatisfied.

*Rexach*, 896 F.2d at 713. Here, there is no doubt that the prosecutors had ample, good faith grounds to decline to move for a downward departure based on Erdil's cooperation.

*CONCLUSION*

Based on the foregoing, it is hereby **ORDERED** that the petition for Section 2255 relief on the basis of the alleged bad faith of the Government in failing to issue a 5K1.1 letter, is denied; and it is further

**ORDERED** that Erdil's Section 2255 petition is dismissed in all respects.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**