Ronald D. **BOURDON**, Petitioner,

v.

Hans **WALKER**, Superintendent Auburn Corr. Facility, Respondent.

No. 9:99CV0325 NPM.

United States District Court, N.D. New York.

June 14, 2006.

---

Ronald D. Bourdon, Auburn, NY, Petitioner, Pro se.

Eliot Spitzer, Attorney General of the State of New York(G. Lawrence Dillon, Esq., Assistant Attorney General, of Counsel), Utica, NY, for Respondent.

## ORDER

MCCURN, Senior District Judge.

### I. Background

#### A. State Court Proceedings

On July 13, 1996, petitioner, *pro se* Ronald D. Bourdon was arrested in the Town of Bainbridge, Chenango County, after New York State Trooper Steven T. Christ observed Bourdon drive up to a gasoline station and begin pumping gas into what Christ believed to be a stolen truck. *See* Transcript of Trial of Ronald D. Bourdon (5/28/97) ("Trial Tr.") at 98–99.[1] As

---

1. Christ had recently been notified that a truck similar in appearance to the one being used by Bourdon had been reported stolen. Trial Tr. at 99.

Chriest approached Bourdon, the trooper noted that Bourdon's eyes were glossy and that his breath contained a strong odor of alcohol. Trial Tr. at 100. Bourdon was placed under arrest for possessing stolen property (the truck) and, after he refused to comply with the trooper's request to perform any sobriety tests, Bourdon was also arrested for driving while intoxicated ("DWI").[2] Trial Tr. at 101. Bourdon was also issued two separate tickets for violating New York's Vehicle and Traffic Law, the first of which accused him of aggravated unlicensed operation of a motor vehicle and the second which charged Bourdon with DWI. See Respondent's Appendix in Support of Appeal ("Resp.App.") at 9.[3]

In criminal complaints executed on July 13, 1996, Bourdon was formally accused of felony DWI, first degree aggravated unlicensed operation of a motor vehicle, and third degree criminal possession of stolen property. See Resp.App. at 1–4. On August 26, 1996, Bourdon appeared before Chenango County Court Judge Kevin M. Dowd for a bail hearing. At that time, Bourdon stated that he lived in Stanford, New York. See Pretrial Proceeding in People v. Bourdon, No. 96–0050 (8/26/96) at 1. Judge Dowd released Bourdon on his own recognizance following that hearing. Id. at 4. On September 17, 1996, the Chenango County District Attorney sent a notice to Bourdon informing him that the district attorney would be presenting a case before the grand jury seeking criminal charges against Bourdon. Resp.App. at 53, 57. That notice, which was sent to the address Bourdon provided to the police at the time of his arrest, was returned to the District Attorney's office marked "Returned to Sender, No Such Street." Resp.App. at 5, 56.[4] On September 24, 1996, the District Attorney again attempted to serve Bourdon with notice of the scheduled grand jury session, however that second notice, which was sent to the Rochelle Park, New Jersey, address that appeared on the tickets that had been issued to Bourdon on July 13, 1996 (see Resp.App. at 9, 53), was returned to the District Attorney as undeliverable because the forwarding order placed by Bourdon with the United States Post Office relating to that address had expired. Resp.App. at 57–58.

On October 1, 1996, a Chenango County grand jury returned an eight count indictment against Bourdon that charged him with, inter alia, DWI, first degree aggravated unlicensed operation of a motor vehicle and third degree criminal possession of stolen property.[5] See Resp.App. at 24–34. After securing that indictment, the District Attorney sent Bourdon a notice concerning his scheduled arraignment at the New Jersey address reflected on his traffic tickets.[6] Resp.App. at 9, 54, 59–60. Although that notice was returned to the District Attorney as undeliverable, see Resp.App. at 60, a second notice regarding the arraignment,

---

**2.** Subsequent testing revealed that Bourdon's blood contained a 0.15 percent blood-alcohol content. Trial Tr. at 130.

**3.** Both of those tickets listed Bourdon's address as a post office box in Rochelle Park, New Jersey. See Resp.App. at 9.

**4.** The District Attorney also sent a notice regarding the grand jury proceeding to Bourdon's counsel, the Chenango County Public Defender's Office. Resp.App. at 54.

**5.** Bourdon did not appear at the grand jury proceeding.

**6.** It is not apparent from the record before the Court whether the initial notice that was sent to Bourdon at the New Jersey address regarding the arraignment was sent to him prior to the date on which the district attorney was notified by the post office that the New Jersey address to which the second notice of the grand jury proceeding had been sent was invalid.

which was sent to Bourdon on October 14, 1996 at a post office box in Nineveh, New York, was not returned to the District Attorney as undeliverable at that address. Resp.App. at 55.

On October 17, 1996, Bourdon failed to appear for his scheduled arraignment in Chenango County Court. Resp.App. at 39. After Bourdon's assigned counsel advised Judge Dowd at that proceeding that counsel had been unable to contact Bourdon to ensure his appearance at the arraignment, Judge Dowd adjourned that matter and issued a warrant for Bourdon's arrest. *Id.* Bourdon was eventually located at the home of his parents in New Hampshire and returned to Chenango County. *See* Pretrial Proceeding in *People v. Bourdon*, No. 96–0050 (11/26/96) at 3–4. On November 26, 1996, Bourdon personally appeared at his arraignment—which had been rescheduled for that day—and pleaded not guilty to all charges in the indictment. *Id.* at 8.

On December 4, 1996, Bourdon filed an application to dismiss the indictment based upon his claim that he had not received notice of the date the criminal charges were to be presented to the grand jury, thereby preventing Bourdon from testifying before that accusatory body in his own defense. Resp.App. at 44–46. That motion was opposed by the District Attorney, whose principal argument in opposition to that application was based upon the fact that the motion was untimely because it had not been filed within five days of Bourdon's arraignment. *See* Resp.App. at

51; *see also* New York's Criminal Procedure Law ("CPL"), § 190.50(5)(c).[7]

While Bourdon's motion to dismiss the indictment was pending, he filed an application with the county court in which he requested that Judge Dowd assign replacement counsel on behalf of Bourdon. *See* Resp.App. at 47–50. Judge Dowd granted that request by order dated December 23, 1996 and appointed John Muhl, Esq.—who was not affiliated with the Public Defender's Office—to represent Bourdon. Resp.App. at 86.

In a decision dated January 2, 1997, Judge Dowd denied as untimely Bourdon's motion to dismiss the indictment. *See People v. Bourdon*, No. 96–0050 (01/02/97) ("January, 1997 Decision") at 1–2 (reproduced at Resp.App. at 87–88).[8] On March 6, 1997, Bourdon's newly-assigned counsel filed a motion to reargue that motion to dismiss the indictment, Resp.App. at 93, however in a decision dated March 27, 1997, Judge Dowd denied that request. Resp.App. at 96.

Bourdon was eventually tried on the charges contained in the indictment in a jury trial that commenced in Chenango County Court on May 28, 1997, with Judge Dowd presiding. Trial Tr. at 1. During the course of that trial, several witnesses testified on behalf of the prosecution, and Bourdon testified in his own defense. *See* Trial Tr. At the conclusion of that proceeding, the jury convicted Bourdon of DWI as well as operating a motor vehicle while having .10 percent or more of alcohol in his blood.[9] Trial Tr. at 221–22. Judge Dowd

---

**7.** In opposing the dismissal motion, the District Attorney recounted the actions that such office had undertaken to advise Bourdon of the grand jury proceeding. Resp.App. at 51–60.

**8.** In denying the dismissal motion, the county court noted that Bourdon had conceded that

his motion to dismiss was untimely. *See* January, 1997 Decision at 1.

**9.** Subsequent to Bourdon's trial, in 2002, the level of alcohol in one's blood that is required to establish an individual's intoxication in New York was reduced from .10 percent to .08 percent. *See* N.Y. Veh. & Traf. L.

also noted at the time that in light of the DWI and unlawful operation convictions, a verdict of first degree aggravated unlicensed operation of a motor vehicle would be entered against Bourdon. Trial Tr. at 229. However, the jury acquitted Bourdon of the charge of criminal possession of stolen property. Trial Tr. at 222.

On July 11, 1997, Judge Dowd sentenced Bourdon to one and one-third to four years imprisonment on the DWI conviction, and a concurrent one and one-third to four year term for his conviction on the charge of first degree aggravated unlicensed operation of a motor vehicle. *See* Transcript of Sentencing of Ronald Bourdon (7/11/97) at 4. Bourdon subsequently appealed his convictions and sentences to the New York State Supreme Court Appellate Division, Third Department. In the appellate brief filed on behalf of Bourdon, counsel argued that: i) although the motion to dismiss the indictment was untimely, the late filing of that motion should have been excused and the application granted; ii) Bourdon's pretrial counsel improperly failed to notify the District Attorney of Bourdon's desire to testify at the grand jury;[10] and iii) the prosecution failed to afford Bourdon adequate notice of the grand jury proceedings. *See* App. Br. at 1–28. Bourdon submitted a supplemental *pro se* appellate brief in support of his appeal in which he argued that: i) he received ineffective assistance of trial counsel; ii) he was denied his right to counsel at a critical stage of his trial; iii) the trial court wrongfully denied Bourdon sufficient time to prepare for his trial; iv) Judge Dowd improperly denied Bour-

don the opportunity to call a witness to testify in his defense; and v) the actions and comments of Judge Dowd during the course of the criminal trial below denied Bourdon his right to a fair trial. *See Pro Se* Appellate Brief at 1–10.

On November 5, 1998, the Appellate Division issued a decision in which it affirmed Bourdon's convictions and sentences in all respects. *See People v. Bourdon*, 255 A.D.2d 619, 681 N.Y.S.2d 615 (3rd Dept.1998). The Court of Appeals subsequently denied Bourdon leave to appeal. *People v. Bourdon*, 92 N.Y.2d 1028, 684 N.Y.S.2d 493, 707 N.E.2d 448 (1998). Bourdon did not file any collateral challenges to his conviction after the filing of his direct appeal. *See* Dkt. No. 1 ("Petition") at ¶ 10.

### B. *This Action*

Bourdon filed the present petition for habeas corpus pursuant to 28 U.S.C. § 2254 on March 3, 1999. *See* Petition. In that application, Bourdon alleges several grounds for relief, including: i) ineffective assistance of counsel during pretrial proceedings and at trial; ii) denial of Bourdon's right to counsel at a critical stage of the criminal proceedings below; iii) bias on the part of the county court judge who presided over Bourdon's criminal trial; iv) improper denial of Bourdon's right to testify before the grand jury that indicted him; v) the knowing use by the prosecution of perjured testimony; and vi) ineffective assistance of appellate counsel. *See* Petition at 5–6.[11] By Order filed April 28, 1999, then-Magistrate Judge David N. Hurd is-

---

§ 1192(2); *see also* 2002 Sess. Law News of N.Y., Ch. 3.

**10.** Imbedded within Bourdon's second claim on appeal was an allegation that Bourdon's pre-trial attorney rendered ineffective assistance. *See* Appellant's Brief on Appeal ("App. Br.") at 25.

**11.** Although Bourdon's petition lists only four grounds for relief, his second ground contains three legally distinct theories in support of his request for federal habeas intervention. *See* Petition.

sued an order that directed the Office of the Attorney General for the State of New York ("Attorney General") to file a response to Bourdon's petition. *See* Dkt. No. 2 ("April, 1999 Order"). On June 29, 1999, the Attorney General for the State of New York, acting on respondent's behalf, filed an answer and memorandum of law requesting dismissal of the petition. *See* Dkt. Nos. 6–7.

On January 9, 2006, then-Chief United States District Judge Frederick J. Scullin, Jr. reassigned the present action to the undersigned for disposition. *See* Dkt. No. 23.

For the reasons discussed below, Bourdon's petition must be dismissed because it is moot and due to his failure to comply with a prior order of this Court by failing to advise the Clerk of the Court of petitioner's current address.

## II. *Discussion*

### A. *Mootness*

On January 11, 2006, the order that was sent to Bourdon notifying him of the reassignment of this action to the undersigned was returned to this Court marked "Return to Sender—Released." *See* Dkt. No. 24. A staff attorney of this Court thereafter examined the web site maintained by the New York State Department of Correctional Services ("DOCS"). According to that web site, on January 31, 2005, Bourdon was released from prison after

reaching the "maximum expiration" date of the sentences imposed on him by Judge Dowd.[12] *See* http://nysdocslookup.docs. state.ny.us/GCA00P00/WIQ3/WINQ130; inmate name "Bourdon, Ronald."

■ Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to cases that present a "case or controversy." *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); *Baur v. Veneman*, 352 F.3d 625, 631–32 (2d Cir.2003); *Greif v. Wilson, Elser, Moskowitz, Edelman & Dicker LLP*, 258 F.Supp.2d 157, 160 (E.D.N.Y.2003). Thus, where the issues presented by a party in an action are no longer "live," or the party lacks a legally cognizable interest in the outcome, the federal action is properly dismissed as moot. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (internal quotations and citations omitted); *Lavin v. United States*, 299 F.3d 123, 128 (2d Cir.2002); *see also Yekimoff v. New York State Div. of Parole*, No. 02 Civ. 8710, 2003 WL 22305171, at *1 (S.D.N.Y. Oct. 8, 2003).[13]

■ In light of the foregoing, this Court must ascertain whether Bourdon's release from prison has rendered this habeas petition moot.

■ The "case-or-controversy" requirement of Article III is typically satisfied in the context of federal habeas petitions challenging the validity of a state

---

**12.** The DOCS web site explains that: "[u]pon reaching the maximum expiration date, the individual's legal obligation to serve a custodial sentence or period of parole supervision ends." (available at www.docs.state.ny.us/ univinq/fpmsdoc.htm# ME).

**13.** Although the respondent has not argued that this action is moot, this Court notes that when a case becomes moot, the federal court is deprived of subject matter jurisdiction over the action. *See Fox v. Board of Trustees of the*

*State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir.1994) (internal quotation and citation omitted). Federal courts must consider *sua sponte* matters, such as whether an action has become moot, that touch upon the court's subject matter jurisdiction. *Krimstock v. Kelly*, 306 F.3d 40, 70 n. 34 (2d Cir.2002) ("whether the claims of some plaintiffs have been rendered moot . . . is a question that a court must address *sua sponte* ").

court conviction because the incarceration "constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." *Spencer*, 523 U.S. at 7, 118 S.Ct. 978; *see also Geraci v. Sheriff, Schoharie County Jail*, No. 99–CV–0405, 2004 WL 437466, at *1–2 (N.D.N.Y. Feb. 20, 2004) (Sharpe, J.). Moreover, a habeas petition challenging a criminal conviction is not necessarily rendered moot when the petitioner is released from prison because collateral consequences of that conviction survive an inmate's release from prison.[14] *See, e.g., Spencer*, 523 U.S. at 12, 118 S.Ct. 978 ("'it is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences'") (quoting *Sibron v. New York*, 392 U.S. 40, 55, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)).

■ However, the Second Circuit has observed that where there is "no material possibility that [the petitioner] will suffer collateral consequences on the basis of the challenged conviction," a federal court may properly dismiss a habeas corpus petition as moot. *Perez v. Greiner*, 296 F.3d 123, 125 (2d Cir.2002). Moreover, the petitioner "bear[s] the burden of demonstrating some concrete and continuing injury sufficient to create an Article III case or controversy." *United States v. Mercurris*, 192 F.3d 290, 294 (2d Cir.1999).

The records before the Court reflect that, in addition to the criminal convictions which Bourdon challenges in the case *sub judice*, he has also been convicted of various other felonies, both prior and subsequent to the criminal action complained of herein. Specifically, the Court has ascertained that on January 15, 1993, Bourdon was convicted of three separate felonies in Broome County Court, including second

degree assault, DWI and first degree aggravated unlicensed operation of a motor vehicle. *See* Dkt. No. 25. Additionally, subsequent to the May, 1997 convictions challenged herein, Bourdon was convicted in Broome County Court of multiple felonies, including three counts of criminal possession of a forged instrument in the second degree, criminal possession of a forgery device, and criminal possession of a weapon in the third degree. *See People v. Bourdon*, 258 A.D.2d 810, 686 N.Y.S.2d 162 (3d Dept.1999). Thus, it is apparent that Bourdon's "basic civil rights" are not at stake in the present action because "[s]uch rights are not at stake for previously convicted felons." *Sylvester v. Hammock*, 524 F.Supp. 53, 56 (E.D.N.Y.1981).

Since: i) Bourdon has fully served the sentence imposed on him relating to the convictions he challenges herein; and ii) there is no material possibility that Bourdon will suffer from any collateral consequences attributable to such conviction due to the numerous other felonies of which Bourdon has also been found guilty that are not challenged in the present action, his petition could be dismissed solely because it is moot. However, the Court notes that this action must also be dismissed because petitioner has failed to comply with a prior order of this Court by his failure to keep the Clerk apprised of his current address.

### B. *Failure to Comply with Prior Order of Court*

■ In his April, 1999 Order, then-Magistrate Judge Hurd, to whom this case had been initially referred pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c), *spe-*

---

**14.** Examples of such collateral consequences include the inability to serve as a juror, engage in certain businesses, or vote. *E.g.*

*Johnson v. Levine*, 00Civ.8402, 2001 WL 282719, at *1 (S.D.N.Y. Mar. 21, 2001).

*cifically advised* Bourdon that he was required to keep both the Clerk's Office for the Northern District of New York and the respondent apprised of his current address, and that his failure to do so would result in the dismissal of his action.[15] *See* April, 1999 Order at 3. Despite that clear and unambiguous notice to Bourdon, he has not informed this Court of his current address since his release from the custody of the DOCS in January, 2005.

In discussing the requirement that parties in the Northern District keep the Clerk apprised of their current address, then-Magistrate Judge Gary L. Sharpe has sagely observed:

> Litigants have a continuing obligation to keep the court informed of any change of address that may occur during the pendency of an action. *See* N.D.N.Y.L.R. 10(b); *Fenza v. Conklin,* 177 F.R.D. 126 (N.D.N.Y.1998) (Pooler, D.J.). Notification of a new address is essential for the orderly disposition of cases as it is not feasible for the court to independently maintain the current addresses of all parties to pending actions. *Id.* at 127 (citations omitted). Furthermore, Rule 41(b) of the Federal Rules of Civil Procedure allows a court to dismiss an action for the failure to prosecute or comply with an order of the court. *See Williams v. Faulkner,* 1998 WL 278288 (N.D.N.Y. May 20, 1998) (Pooler, D.J.). Consequently, the petitioner's failure to notify the court of an address change is grounds for dismissal. *[Fenza,]* 177 F.R.D. at 127.

*Michaud v. Williams,* No. 98CV1141, 1999 WL 33504430, at *1 (N.D.N.Y. Nov. 5, 1999).

For nearly seventeen months, Bourdon has failed to comply with the directive of Judge Hurd—as well as the requirements

of this District's Local Rules—concerning Bourdon's obligation to keep the Clerk of the Court apprised of petitioner's current address. Therefore, this Court alternatively dismisses the present action due to petitioner's failure to comply with the terms of the April, 1999 Order and Local Rules 10.1(b) and 41.2(b). *See Michaud,* 1999 WL 33504430, at *1; *see also Faulkner,* 1998 WL 278288, at *1 (citing N.D.N.Y.L.R. 41.2(b)).

**WHEREFORE,** based upon the above, it is hereby

**ORDERED,** that the petition in this matter is **DENIED** and **DISMISSED** as moot and due to petitioner's failure to comply with the terms of the April, 1999 Order as well as Rules 10.1(b)(2) and 41.2(b) of the Local Rules of Practice for the Northern District of New York, and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Decision and Order upon the parties by regular or electronic mail.

15. That directive was in all likelihood issued in recognition of Rules 10.1(b) and 41.2(b) of the Local Rules of Practice for the Northern District of New York ("Local Rules").