Martin v. United States

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————

August Term 2019

(Argued: May 20, 2020 | Decided: September 3, 2020)

Docket No. 19-1701

UNITED STATES OF AMERICA,

*Appellee*,

v.

JERROD MARTIN,

*Defendant-Appellant*.†

———————

Before:
SACK, WESLEY, and LIVINGSTON, *Circuit Judges*.


In November of 2005, Jerrod Martin pleaded guilty to conspiracy to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) and to using a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i).  He was sentenced to 150 months' imprisonment for conspiracy to distribute crack cocaine, and to a consecutive 60-months' imprisonment for use of a firearm in furtherance of a drug trafficking offense. While imprisoned for those offenses, Martin committed two additional offenses and was sentenced to two consecutive 12-month terms of imprisonment.

———————

† The Clerk of the Court is directed to amend the official caption as set forth above.

In March of 2019, Martin moved for resentencing pursuant to the First Step Act, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018).  Although the district court initially granted Martin's motion, it soon vacated its order and denied his motion as moot after learning that Martin had completed serving his 150-month term of imprisonment for conspiracy to traffic crack cocaine and remained imprisoned only because he continued to serve two consecutive sentences imposed for offenses committed while in prison that Martin did not mention in his original application for re-sentencing.  Martin appeals, arguing that the First Step Act permits retroactive modification of a sentence that has already been served where that sentence's reduction would have the effect of crediting over-served time to later-imposed consecutive sentences for, in this instance, crimes committed while Martin was in  prison.

We disagree.  Sentences are imposed separately for convictions on specific violations of criminal statutes and are aggregated only for administrative purposes.  Because sentences within judgments of conviction are otherwise final orders, they are modifiable only in limited circumstances.  The First Step Act permits such modification—a district court may "impose a reduced sentence" for a "covered offense."  However, where an inmate, like Martin, has already served the term of imprisonment imposed for a "covered offense," we hold the statute no longer permits relief.  Because the relief authorized by the First Step Act is no longer possible, Martin's motion is moot.

We therefore **AFFIRM.**  Judge Sack dissents in a separate opinion.

————————————

COLLEEN P. CASSIDY, Assistant Federal Defender, Federal Defenders of New York, Inc., New York, NY, *for Defendant-Appellant*.

ANDREY SPEKTOR, Assistant United States Attorney, (David C. James, Assistant United States Attorney, *on the brief*), *for* Richard P. Donoghue, United States Attorney for the Eastern District of New York, Brooklyn, NY.

————————————

WESLEY, *Circuit Judge*:

Jerrod Martin pleaded guilty, pursuant to a plea agreement, to one count of conspiracy to distribute and possess with the intent to distribute crack cocaine in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) and one count of using a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i). In July of 2007, he was sentenced to 150-months' imprisonment for conspiracy to distribute and possess with intent to distribute and to 60-months imprisonment, to be served consecutively, for using a firearm during a drug trafficking offense.

In March of 2019, Martin moved for resentencing pursuant to the First Step Act, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018).[1] Martin requested that his drug conspiracy sentence be reduced from 150 months to 60 months resulting in an aggregate sentence from the drug conspiracy and gun sentences of 120 months. The United States District Court for the Eastern District of New York (Cogan, *J.*) concluded that it could not reduce Martin's sentence below the time he had served and instead granted Martin's motion by reducing his sentence to time

---

[1] Martin had previously moved, *pro se*, to set aside his judgment under Federal Rule of Civil Procedure 60(b). The district court denied that motion in its first Decision and Order on Martin's application for relief under the First Step Act. Martin has not raised this issue since the district court's initial decision, and we need not address it.

served and directing his immediate release. Shortly thereafter, the Bureau of Prisons notified the district court that, because of good time credit, Martin had completed serving his original two terms of imprisonment in late 2018 but remained imprisoned because he continued to serve two consecutive 12-month sentences imposed for crimes committed while he was in prison—crimes (and corresponding sentences) not mentioned by Martin in his First Step Act application nor by the government in its response.[2] The district court then vacated its prior order and denied Martin's motion for relief under the First Step Act as moot.

Martin moved for reconsideration, arguing that because the Bureau of Prisons aggregated his sentences and treated them as one, the district court should do so also. Thus, the court could still order his immediate release if his drug conspiracy sentence was reduced in conjunction with his mandatory gun sentence to a total of 188 months. That sentence would result in the remaining time Martin

---

[2] We note that Martin's initial application for relief was made *pro se*, and we ascribe no motivation to him or his counsel's failure to inform the district court of Martin's additional sentences. Many prisoners, and the Federal Defenders, made motions under the First Step Act shortly after it became law. We note that both Martin and the Government failed to mention Martin's additional sentences only to show the facts as they were presented to the district court and to explain the procedural rollercoaster contained in the record.

had already served being credited towards his two 12-month terms of imprisonment and Martin would be released in short order, thus accomplishing the intent of the district court's original order.[3]

The district court denied Martin's motion for reconsideration. The court reasoned that it lacked the ability to, in effect, modify Martin's aggregate term of imprisonment. It found that section 404 of the First Step Act did not permit a general resentencing, and only permitted the imposition of a reduced sentence for a "covered offense." The court therefore lacked the ability to reduce his drug conspiracy sentence in order to generate overserved time that could be credited to his 12-month terms of imprisonment.

Martin appeals; he argues that the district court erred in determining it could not grant the relief he requested because reducing the term of imprisonment for his crack cocaine offense would have a collateral effect on his "sentence"—it would result in crediting the time he over-served on the reduced sentence towards his later, consecutive sentences. He further argues that the First Step Act contains

---

[3] Martin also argued that his motion was not moot because the district court could reduce his term of supervised release.

5

no limitation preventing the court from retroactively reducing his sentence to less than time served. We disagree in both respects.

Sentences are imposed for specific convictions within judgments of conviction. Judgments of conviction are final judgments that are only modifiable by courts in limited circumstances, including where "expressly authorized" by statute. The fact that multiple sentences may be aggregated for administrative purposes does not authorize a court to treat those sentences as an undivided whole, the authorization to modify one part of which confers authorization to modify the whole.

Section 404(b) of the First Step Act permits district courts to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *See* Pub. L. 115-391, 132 Stat. at 5222. The First Step Act only the authorizes the imposition of a reduced sentence for specific offenses, and where an inmate has already served his sentence for that specific offense, the Act does not authorize any relief. The plain language of the Act involves the "imposition" of a "reduced sentence"; we cannot read that language to permit the imposition of a new and reduced sentence where the original has been served. The fact that granting retroactive relief would affect

6

another sentence that was aggregated for administrative purposes does not operate to create a live case or controversy.

Therefore, an inmate like Martin—who has served the entirety of his sentence for a covered offense and remains imprisoned only by virtue of consecutive terms of imprisonment arising out of separate judgments of conviction—cannot obtain effectual relief through a favorable judicial decision authorized by the First Step Act. Martin points to no collateral consequences stemming from his sentence for drug trafficking. Nor does the practice of crediting time spent in prison to other sentences where a defendant's conviction or sentence has been vacated operate to create a live case or controversy because Martin neither challenges his conviction nor argues that his sentence was unlawful when it was imposed.

For these reasons we affirm the district court's decision dismissing Martin's motion as moot.

## BACKGROUND

### I.      Martin's Sentences[4]

Jerrod Martin was a member of a drug trafficking organization operating in Brooklyn, New York.  Martin and several of his co-conspirators were arrested in June of 2003 and indicted for a number of criminal acts including trafficking 50 grams or more of cocaine base (otherwise known as "crack" or "crack cocaine"), and committing a homicide in 2003.[5]  On November 1, 2005 Martin pleaded guilty pursuant to a plea agreement to one count of conspiracy to distribute and possess with the intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846 (Count Seven), and one count of using a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count Ten).  Martin stipulated that he would be sentenced based on having distributed 1.5 kilograms of crack cocaine during the time in which the trafficking organization operated. At Martin's plea allocution, he admitted that his organization had trafficked roughly 1.5 kilograms of crack during its tenure.

---

[4] References to J.A. refer to the Joint Appendix, references to G.A. refer to the Government's Appendix, and references to PSR refer to Martin's Pre-Sentencing Investigation Report.

[5] Martin has been in custody since his arrest on June 18, 2003.

In July of 2007, Judge Trager sentenced Martin to 150-months' imprisonment for Count Seven and a consecutive 60-months' imprisonment for Count Ten.[6] Under the law at the time, Martin was subject to a 10-year mandatory minimum sentence for Count Seven, and a 5-year mandatory minimum sentence for Count Ten. *See* 21 U.S.C. § 841(b)(1)(A) (2006).

Martin was convicted of two additional crimes while serving those two terms of imprisonment. In June of 2010, Martin pleaded guilty to an information charging a misdemeanor drug offense and was sentenced to a consecutive 12-month term of imprisonment. Four years later, Martin was convicted after a jury

---

[6] The PSR prepared for Martin calculated his guidelines range as 360-months to life imprisonment based on an offense level of 40 and a criminal history category of 3. That base offense level was predicated upon the homicide committed by other members of Martin's drug trafficking organization, and because Martin was a leader of the organization, the PSR indicated he was accountable for that murder. Martin's co-defendants objected to the PSR's Guidelines calculations and Judge Trager sentenced them accordingly, based only upon the drug-related count, not upon the murder count. Martin's counsel, however, did not object to the PSR's Guidelines calculations, and Judge Trager mentioned those calculations at his sentencing proceeding. Some of Martin's co-defendants were able to receive sentencing reductions based on subsequent changes to the Sentencing Guidelines that were applicable to their drug offenses. However, because Martin had been sentenced with reference to a murder charge, *see* U.S.S.G. § 2A1.1 (cross-referenced by U.S.S.G. § 2D1.1(d)(1), which applies to violations of 21 U.S.C. § 841(a)(1)), Martin was ineligible for the same sentencing reduction because Amendment 782 to the Sentencing Guidelines did not affect Martin's adjusted offense level. *See* U.S.S.G. app. C., amend. 782 (U.S. SENTENCING COMM'N 2014).

trial of the misdemeanor assault of a corrections officer and was sentenced to another consecutive 12-month term of imprisonment. *See United States v. Martin*, 704 F. App'x 34, 35 (2d Cir. 2017) (summary order).

## II. Martin's Motion for Relief Under the First Step Act

In 2010, Congress enacted the Fair Sentencing Act, which reduced the mandatory minimum sentence for distribution of 50 grams or more of crack cocaine from 10 years to 5 years. *See* Pub. L. No. 111-220, §§ 2–3, 124 Stat. 2372, 2372 (amending 21 U.S.C. § 841(b)(1)). The Fair Sentencing Act also increased the threshold required to trigger a 10-year mandatory minimum sentence from 50 grams to 280 grams of crack cocaine. *See id.* § 2. However, the Fair Sentencing Act did not apply retroactively to defendants sentenced before the Act became effective. *See Dorsey v. United States*, 567 U.S. 260, 268–69 (2012). In 2018, Congress passed the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Section 404(b) of the First Step Act permits a district court, on a motion from the defendant, the Bureau of Prisons ("BOP"), or the Government, to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." 132 Stat. at 5222.

On March 1, 2019, Martin moved for relief under the First Step Act in the United States District Court for the Eastern District of New York.[7]  When Martin made his motion, he had already spent over 188 months in prison.[8]  Martin sought a reduction of his sentence under Count Seven, the "covered offense," to 60-months imprisonment, and requested that the court impose a total sentence of 120-months imprisonment, which would result in his immediate release.  No mention was made of Martin's convictions for the offenses he committed in prison.  The

---

[7] Martin has attempted to receive modification of his sentence on several occasions. Although the sentences imposed by Judge Trager in 2007 were within the range stipulated to in Martin's plea agreement, he appealed his sentence in 2008.  His counsel later filed an *Anders* brief, and on May 5, 2008, this Court summarily affirmed Martin's sentence and granted his counsel permission to withdraw.  *See United States v. Martin*, No. 07-3214 (2d Cir. May 5, 2008).  In 2009, Martin moved to modify his sentence pursuant to 18 U.S.C. § 3582(c)(2), arguing that he was entitled to a reduction in his base offense level from 40 to 32 based on the drug quantity to which he pleaded guilty.  Martin also filed a *habeas* petition pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of counsel based on failures to obtain a more favorable plea bargain, and to argue that a consecutive sentence was not required under Count Ten.  *See Martin v. United States*, No. 09-cv-02337, Dkt. 1 (filed May 29, 2009).  The district court (Cogan, *J.*) denied Martin's motion for a sentencing reduction because his "guideline range was calculated pursuant to his responsibility for a drug-related homicide . . . and [the applicable Guidelines range for § 2A1.1 has] not been revised since [Martin] was sentenced."  *Martin v. United States*, No. 09-cv-02337, Dkt. 15 at 2 (E.D.N.Y. Feb. 16, 2011).  The court also denied Martin's § 2255 petition.  *See id.* at 2–3.  As noted above, Martin also moved *pro se* to set aside his judgment under F.R.C.P. 60(b) in November of 2018.  The district court denied that motion in its first ruling on Martin's First Step Act motion.  *See United States v. Martin*, No. 03-cr-795 (BMC), 2019 WL 1558817, at *1–3 (E.D.N.Y. April 10, 2019).

[8] Martin was imprisoned on June 18, 2003, and made his motion 15 years, 8 months, and 11 days later, on March 1, 2019.

11

Government opposed Martin's motion, arguing that the 1.5 kilograms of cocaine base trafficked by Martin's organization "supports application of the same statutory penalties even after passage of the Fair Sentencing Act." J.A. 98.

In April of 2019, the district court (Cogan, *J.*) rejected Martin's request for a reduced sentence of 60-months for Count Seven but reduced his sentence to time served and directed his immediate release. *See United States v. Martin*, No. 03-cr-795 (BMC), 2019 WL 1558817, at *3 (E.D.N.Y. April 10, 2019) (Vacated). Soon after that decision was issued, the BOP informed the district court that, because of good time credit, Martin had completed serving both terms of imprisonment imposed by Judge Trager in 2007 at some point between September and December of 2018. But Martin remained imprisoned because of the two 12-month terms of incarceration that had been imposed for crimes committed while he was in prison. After giving notice to the parties and hearing argument, the district court vacated its prior decision and denied Martin's motion as moot. *See United States v. Martin*, No. 03-cr-795 (BMC), 2019 WL 2296051, at *1–2 (E.D.N.Y. April 22, 2019) ("*Martin II*").

Martin moved for reconsideration. He argued that his sentences from his various convictions are aggregated by the Bureau of Prisons and he has but one

12

sentence, one period of incarceration. Thus, his motion was not moot because imposing a reduced sentence of 188-months' imprisonment would "result in the past 24 months being credited" to the later-imposed 12-month terms of imprisonment and in Martin's immediate release.[9] J.A. 165–66. The district court denied Martin's motion. *See United States v. Martin*, No. 03-cr-795 (BMC), 2019 WL 2289850 (E.D.N.Y. May 29, 2019) ("*Martin III*").

The court rejected Martin's argument that he was serving "one sentence" and reasoned that the First Step Act did not empower it to retroactively impose a reduced term of imprisonment where the defendant was no longer serving that term of imprisonment. *See Martin III*, 2019 WL 2289850, at *3–4. Because the statute did not permit the district court to engage in "plenary resentencing," the court reasoned it had no power to alter any sentence other than one imposed for a "covered offense." *See id.* The district court also noted that, even if it were

---

[9] Martin also argued that the district court could reduce Martin's term of supervised release, and therefore his motion was not moot. The district court denied Martin's motion in this respect. The court noted that Martin had previously requested only a modification of his term of imprisonment and thus could not create a live controversy by now expanding his request to a modification of the supervised release portion of his sentence. *See Martin III*, 2019 WL 2289850, at *2. Furthermore, the court stated that it would deny Martin's request for a modification of his term of supervised release in an exercise of its discretion. *See id.* at *6.

permitted to reduce Martin's term of imprisonment, it would exercise its discretion not to do so. *See Martin III*, 2019 WL 2289850, at \*5–6.

Martin timely appealed, arguing that the district court's decision is incorrectly premised on the ground that the First Step Act does not allow a defendant to receive a reduction of an already-served sentence if he remains in custody serving consecutive sentences for unrelated offenses because all of the sentences are aggregated by the Bureau of Prisons and are to be treated as one sentence. Martin argues that the district court's holding is "contrary to the plain language of the [First Step] Act, inconsistent with the purpose of the Act," and contrary to other district court decisions. Pet'r's Br. at 2–3. Martin begins by arguing that nothing in the language of the First Step Act prohibits modification of sentences that were already served, so long as a sentence was imposed for a "covered offense." *See generally id.* at 13–20. Because the language of the act does not forbid the relief Martin requests, Martin argues his motion is not moot because "the imposition of a term of [time served] would give Mr. Martin credit against the consecutive misdemeanor sentences that he already incurred and is serving . . . ." *Id.* at 20.

The Government counters by arguing that Martin does not qualify for a reduction of his sentence because the quantity of crack cocaine for which he admitted responsibility "greatly exceeded 280 grams, the amount necessary to trigger the highest mandatory minimum sentence under the current version of the statute." Resp't's Br. at 19. The Government also argues that, even if Martin were eligible for a reduction, the offenses for which he is currently imprisoned are not covered by the First Step Act, and that, in the alternative, the district court did not abuse its discretion in denying Martin's motion for relief.

## DISCUSSION

### I. Martin Was Eligible for Relief Based on His Plea and Sentence.

Eligibility for relief under the First Step Act depends upon having been sentenced for a "covered offense." *See* § 404(b), 132 Stat. at 5222. Section 404(a) of the First Step Act defines a "covered offense" as a "violation of a Federal Criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . ." 132 Stat. at 5222. The Government argues that Martin is ineligible for relief under the First Step Act because he admitted to conspiring to traffic 1.5 kilograms of crack cocaine during his plea allocution, and a minimum sentence imposed under the Fair Sentencing Act on the basis of 1.5 kilograms of

15

crack cocaine would not differ from the sentence that Judge Trager actually imposed upon him. *See* 21 U.S.C. § 841 (b)(1)(A)(iii). We disagree; Martin would have been eligible for relief under the First Step Act had he not already served his sentence.

We recently rejected the Government's argument in *United States v. Johnson*, 961 F.3d 181, 186–191 (2d Cir. 2020), where we determined that "it is the statute under which a defendant was convicted, not the defendant's actual conduct, that determines whether a defendant was sentenced for a 'covered offense' within the meaning of Section 404(a) [of the First Step Act]." *Id.* at 187; *see id.* at 190–91. Martin was indicted for, and pleaded guilty to, conspiring to traffic 50 grams or more of crack cocaine. "Section 2 of the Fair Sentencing Act modified the statutory penalties associated with a violation of those provisions by increasing Section 841(b)(1)(A)(iii)'s quantity threshold from 50 to 280 grams," and thus modified the penalties for Martin's statutory offense. *Johnson*, 961 F.3d at 190. Martin was sentenced for a "covered offense" as defined by section 404(a) of the First Step Act.

## II.     Martin's Motion for Relief is Moot

Martin was sentenced for a "covered offense," and thus would be eligible for relief under the First Step Act, if the Act permits the district court to impose a

reduced sentence for his drug conspiracy conviction. To determine whether the First Step Act permits modification of an already-served sentence, it seems logical to start with its plain language.[10] *See United States v. Lockhart*, 749 F.3d 148, 152 (2d Cir. 2014). Section 404(b) of the First Step Act reads in full:

> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense *may*, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, *impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010* (Public Law 111–220; 124 Stat. 2372) *were in effect at the time the covered offense was committed*.

132 Stat. at 5222 (emphases added).

Section 404(b) permits courts to "impose a reduced sentence as if" certain provisions of the Fair Sentencing Act of 2010 "were in effect at the time the covered offense was committed." *Id.* The statute's language tells us that a court may impose a sentence under the sentencing regime laid out under the Fair Sentencing Act—which will provide for lower penalties than those mandated when the defendant was originally sentenced. Martin was sentenced for a "covered offense" in 2007; had he been sentenced "as if the Fair Sentencing Act of 2010 were in effect

---

[10] We review questions of statutory interpretation *de novo*. *United States v. Johnson*, 961 F.3d 181, 186 (2d Cir. 2020).

17

at the time [his] offense was committed," he would have been subject to a less-severe mandatory minimum sentence. Thus, whether a successful motion made under section 404(b) can grant Martin effective relief depends upon what it means for a court to "impose a reduced sentence." *See Lockhart*, 749 F.3d at 152 ("Where, as here, the plain meaning is not [determinative], we can draw upon a variety of interpretive tools, including . . . statutory structure[] and legislative history to discern meaning."); *see also Tanvir v. Tanzin*, 894 F.3d 449, 463 (2d Cir. 2018) ("Congress is presumed to legislate with familiarity of the legal backdrop for its legislation."), *cert. granted*, 140 S. Ct. 550 (2019).

### A. The Nature of Sentences

The power of courts to sentence defendants convicted of violations of federal statutes is prescribed by statute. *See generally* 18 U.S.C. § 3551(a); 18 U.S.C. § 3581(a) ("A defendant who has been found guilty of an offense may be sentenced to a term of imprisonment."); *Mistretta v. United States*, 488 U.S. 361, 364 (1989) ("Congress, of course, has the power to fix the sentence for a federal crime, and the scope of judicial discretion with respect to a sentence is subject to congressional control." (citations omitted)). And "a judgment of conviction that includes a sentence constitutes a final judgment for all other purposes." 18 U.S.C. § 3582(b).

18

Statutes like the First Step Act provide exceptions to the otherwise-general rule of finality. *See* 18 U.S.C. § 3582(b)(1), (c)(1)(B); *Dillon v. United States*, 560 U.S. 817, 824 (2010); *see also United States v. Holloway*, 956 F.3d 660, 665–66 (2d Cir. 2019) (determining that motions made under the First Step Act are properly analyzed under 18 U.S.C. § 3582(c)(1)(B), "which provides that a 'court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute'" (quoting 18 U.S.C. § 3582(c)(1)(B))). But other than the limited exceptions provided by statutes, the Sentencing Commission, and the Federal Rules of Criminal Procedure, courts are not free to modify sentences at will.

Under the Federal Sentencing Guidelines, sentences within judgments of conviction are imposed for particular counts of conviction, despite that they may be imposed as part of one judgment of conviction or grouped to determine an adjusted offense level. *See, e.g.*, U.S.S.G. § 5G1.2(a) & cmt. 1. Sentences imposed in multiple-count cases are "imposed independently" for each count of conviction, despite that, in most instances, sentences imposed as part of the same judgment of conviction run concurrently to each other. *See, e.g.*, U.S.S.G. § 5G1.2(a). The Guidelines anticipate that the imposition of a reduced sentence for one offense might result in the reduction of a sentence for another offense that was imposed

19

as part of the same judgment of conviction. *See, e.g.*, U.S.S.G. §§ 1B1.1(a)(4), 3D1.1, 3D1.2, 3D1.3.[11] Furthermore, the Guidelines specify that, when an inmate commits an offense while serving an undischarged term of imprisonment, the later sentence should run consecutively to the undischarged term of imprisonment. *See* U.S.S.G. § 5G1.3(a).

"Notwithstanding the fact that a sentence to imprisonment can subsequently be modified" pursuant to specific provisions of the United States Code, corrected as provided for by Rule 35 of the Federal Rules of Criminal

---

[11] Section 1B1.1(a)(4) instructs sentencing courts to calculate the guideline range for each sentence where there are multiple counts of conviction, and then to apply Part D of Chapter Three to group offenses, if possible, and thereby adjust the combined offense level. *See* § 1B1.1(a)(4). Sections 3D1.1, 3D1.2, and 3D1.3 instruct courts how to group offenses and calculate combined offense levels for grouped offenses. In certain instances, a reduction in the guidelines offense-level for one offense may result in the reduction of the combined offense level. For example, where a defendant is convicted of two or more offenses that are groupable under § 3D1.2, the most serious offense forms the offense level applicable to a given group of offenses. If the guidelines range for that offense is later reduced, the defendant may be able to obtain a sentencing reduction that has the effect of reducing his sentence for other grouped offenses. Thus, where a judgment of conviction contains multiple convictions and sentences for multiple offenses, and where the defendant's sentences are contingent upon the calculated offense level of other offenses (which is often the case in bank robbery convictions, for example, *see* § 3D1.5 cmt. 1), a reduction of one sentence may impact sentences that were imposed for other convictions within the same judgment of conviction. That is not this case. *Cf., e.g., United States v. Hudson*, --- F.3d ----, 2020 WL 4198333, at *3–4 (7th Cir. 2020) (finding the First Step Act permitted modification of grouped offenses other than covered offense for purposes of imposing a reduced sentence).

20

Procedure, or through the appellate process, "a judgment of conviction that includes such a sentence constitutes a final judgment for all other purposes." *See* 18 U.S.C. § 3582(b). Congress has limited courts' authority to modify imposed sentences to limited circumstances. *See generally* 18 U.S.C. § 3582(c).

Specifically, section 3582(c) provides that "court[s] may not modify a term of imprisonment once it has been imposed except" on a motion by the director of the BOP or a defendant if extraordinary and compelling reasons warrant such a reduction or if the defendant is at least 70 years of age and has served 30 years in prison for the offenses for which he is currently imprisoned. *See id.* § 3582(c)(1)(A). Furthermore, a "court may [also] modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." *Id.* § 3582(c)(1)(B). And, where a defendant was sentenced to a term of imprisonment based on a sentencing guidelines range that was subsequently lowered by the Sentencing Commission, a court may reduce the term of imprisonment "after considering the factors set forth in section 3553(a) . . . [and] if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(2). For example, section 1B1.10(b)(2)(C) of the Sentencing Guidelines provides that that "[i]n no event may

21

the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." *See* U.S.S.G. § 1B1.10(b)(2)(C).

The cornerstone to Martin's argument is that, while he may have been sentenced a number of times for a number of crimes, his "sentence" is an undivided whole—it is one sentence as determined by the Bureau of Prisons in calculating how long he will remain in federal custody. Thus, a reduction in one component can result in a credit elsewhere without the need to separate the sentence into its respective segments. Eligibility for a reduced sentence may be crime specific, but Martin argues that the benefit need not be. While Martin is right as to how the Bureau performs its custodial calculations, sentences are a function of a judicial process—they are imposed and served for specific offenses. Sentences are only aggregated—or combined—in specific circumstances.

The statute on which Martin builds his argument, 18 U.S.C. § 3584(c), provides that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated *for administrative purposes* as a single, aggregate term of imprisonment." 18 U.S.C. § 3584(c) (emphasis added). Those administrative purposes are explained in, among other provisions, 18 U.S.C. § 3585, which authorizes the Bureau of Prisons to provide inmates with credit towards their

sentence for various reasons, including for time spent in detention prior to commencement of the sentence. *See generally United States v. Wilson*, 503 U.S. 329, 333–35 (1992) ("After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for *administering* the sentence." (emphasis added)).

Aggregation for administrative purposes does not imply that every sentence imposed may be modified based on an authorization to modify one component part. In fact, courts that have modified sentences outside the context of the First Step Act have routinely rejected that administrative aggregation permits the modification of sentences that have already been served. *See, e.g.*, *United States v. Llewlyn*, 879 F.3d 1291, 1295 (11th Cir. 2018) (finding moot a motion made under § 3582(c)(2) to reduce a sentence that had already been served where inmate remained imprisoned due to later consecutive sentences imposed for offenses committed while serving original sentence); *United States v. Vaughn*, 806 F.3d 640, 643–44 (1st Cir. 2015) (same); *United States v. Parker*, 472 F. App'x 415, 417 (7th Cir. 2012) (same). For example, the Eleventh Circuit affirmed the denial of an inmate's motion for a sentencing reduction under § 3582(c)(2) as moot where the inmate sought to reduce an expired sentence despite remaining in prison for later

imposed sentences. *See Llewlyn*, 879 F.3d at 1293. In *Llewlyn*, the inmate argued that "his two consecutive federal sentences are aggregated and he is actually serving a single sentence," thus the policy statement contained in § 1B1.10(b)(2)(C) did not prevent the requested reduction. *Id.* at 1295. The Eleventh Circuit rejected that argument and refused to extend the concept of administrative aggregation found in § 3584(c) to resentencing proceedings. *See id.* The Eleventh Circuit's reasoning is helpful when considering Martin's case. The Eleventh Circuit reasoned that courts' "judicial decisions under § 3582 do not constitute an 'administrative purpose,'" and that to so find would "essentially rewrite the statute to extend aggregation to *all* purposes." *Id.* at 1295 (quoting *Vaughn*, 806 F.3d at 644).

Section 3584(c) provides no textual support for the position that sentences may be aggregated for the purpose of resentencing, nor has any court interpreted the statute in such a fashion. The authorization to modify sentences in section 3582 permits courts to modify "term[s] of imprisonment," and section 3584(c) tracks that language, providing that "*terms* of imprisonment shall be treated *for administrative purposes* as a single, aggregate *term* of imprisonment." *See* § 3584(c) (emphasis added). Thus, where an inmate is imprisoned upon multiple sentences

24

that are aggregated for administrative purposes, courts require specific modification authorization—either due to a change in the guidelines ranges for a sentence on a particular count of conviction, or because a statute authorizes the reduction of a sentence—for *each* term of imprisonment contained in an otherwise final judgment of conviction.

### B. The First Step Act Does Not Permit Retroactive Modification of Sentences Already Served

Motions made under the First Step Act are properly considered under 18 U.S.C. § 3582(c)(1)(B). *Holloway*, 956 F.3d at 665–66. Section 3582(c)(1)(B) permits modification of a sentence to the extent "expressly permitted by statute." We have previously interpreted section 3582(c)(1)(B) to require "that a statute contain an express grant of remedial power, and that this power be broad enough to permit the resentencing in question." *United States v. Triestman*, 178 F.3d 624, 629 (2d Cir. 1999).

The language of the First Step Act is circumscribed, it permits courts only to "***impose a reduced sentence*** as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." *See* § 404(b), 132 Stat. at 5222 (emphasis added). The plain language of the Act permits the limited modification of a specific sentence, it does not give district courts *carte blanche* to

25

modify terms of imprisonment other than those imposed for "covered offenses." Furthermore, the stated purpose of the First Step Act suggests that section 404 was intended only to extend the Fair Sentencing Act retroactively in an effort to remedy sentencing disparities between defendants sentenced for the same conduct prior to and after the enactment of the Fair Sentencing Act.[12]

"Covered offenses" under the First Step Act are those for which the statutory penalties were modified by sections 2 or 3 of the Fair Sentencing Act. § 404(a), 132 Stat. at 5222; *see* §§ 2–3, 124 Stat. at 2372. The explicit reference to sections 2 or 3 of the Fair Sentencing Act demonstrates that the First Step Act permits a sentencing reduction *only* to the extent that sections 2 or 3 of the Fair Sentencing Act would apply. *See Burgess v. United States*, 553 U.S. 124, 130 (2008) ("As a rule, a definition which declares what a term means excludes any meaning

---

[12] *See, e.g.*, 164 Cong. Rec. S7764 (Sen. Booker) ("The problem was the change [in the disparity between powder and crack cocaine sentencing addressed in the Fair Sentencing Act] wasn't retroactively applied. . . . We never made this change retroactive. . . . Making this fix in the bill alone will mean that thousands of Americans who have more than served their time will become eligible for release . . . ."); *id.* at S7774 (Sen. Feinstein) ("Congress addressed [the disparity between crack and powder cocaine sentencing] in 2010, when the Fair Sentencing Act became law. . . . Unfortunately, this new law did not apply retroactively, and so there are still people serving sentences under the 100-1 standard. The bill before us fixes that and finally makes the Fair Sentencing Act retroactive so that people sentenced under the old standard can ask to be resentenced under the new one.").

that is not stated." (alterations, citations, and internal quotation marks omitted)). The First Step Act therefore provides no text authorizing a court to alter sentences other than those imposed for violations of a "covered offense." *See, e.g.*, *Dillon*, 560 U.S. at 825 (interpreting the language "may reduce the term of imprisonment" in § 3582(c)(2) not to "authorize a sentencing or resentencing proceeding," but instead providing for a "modif[ication of] a term of imprisonment."(alteration in original)).[13] Thus, section 404(b)'s text, along with its narrow scope, shows that Congress "intended to authorize only a limited adjustment to an otherwise final sentence . . . ." *See id.* at 826.

The First Step Act permits a sentencing modification only to the extent the Fair Sentencing Act would have changed the defendant's "covered offense" sentence. For Martin to obtain relief, the Act must "expressly permit" modification of a sentence that has already been served. It does not.

The text of the statute permits only the "impos[ition] of a reduced sentence," from which we cannot also imply an authorization to reduce a term of

---

[13] Although motions made under the First Step Act are properly considered under § 3582(c)(1)(B), *see Holloway*, 956 F.3d at 660, that does not suggest that the First Step Act should be interpreted differently from analogous language in § 3582(c)(2).

imprisonment that has already been served. The act of imposing something means "to levy or exact," *see Impose*, BLACK'S LAW DICTIONARY (11th ed. 2019), to "establish or apply by authority," or "bring about as if by force," *see Impose*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/impose (last visited August 4, 2020). It makes little sense to bring about, exact, establish, or apply a *reduced* term of imprisonment where the term of imprisonment to be reduced has been completed.

The act of imposing connotes the affirmative placement of a burden or a restriction; it makes little sense to place a "reduced" burden or restriction where no burden or restriction exists. The same cannot be said where a defendant continues to serve his term of imprisonment—there, the imposition of a "reduced" sentence merely modifies a punishment that has yet to be completed.

Furthermore, administrative aggregation of sentences for the purpose of calculating time served, and the fact that the reduction Martin requests would affect that calculation, cannot create an authorization for retroactive relief that is neither expressly stated within nor implied by the statute. It bears repeating that sentences are imposed for specific offenses; a statutory authorization to apply, establish, exact, or bring about a reduced sentence for one offense does not permit

28

modification of aggregated sentences where the modifiable sentence is no longer being served. To do so would erroneously treat the sentences as an undivided, aggregated whole. The "imposition" of a sentence is not an administrative purpose under section 3584(c), and to construe it as such would warp the structure of that chapter of the United States Code.

Although Martin argues this Court should not "imply a limitation where none has been written by Congress," he misapprehends the relevant question: whether the statute "expressly" permits the requested relief. It does not. "Of course, Congress may depart from [our traditional legal concepts]; it may use words in ways that are unconventional, or adopt innovative procedures." *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 760 F.3d 151, 166 (2d Cir. 2014). But absent any suggestion that Congress intended to upend the structure of resentencing proceedings, or to use the terms appearing in section 404(b) in a novel fashion, we cannot read into the statute the authorization to grant the relief Martin requests.

To the extent we presume that Congress legislates with familiarity of the legal backdrop for its legislation, *see, e.g.*, *Tanvir*, 894 F.3d at 463; *see also Ryan v. Gonzales*, 568 U.S. 57, 66 (2013) ("We normally assume that, when Congress enacts

29

statutes, it is aware of relevant judicial precedent."), it makes sense to look to an analogous resentencing proceeding for guidance: 18 U.S.C. § 3582(c)(2), which permits modification of a term of imprisonment based on a retroactive change to the Sentencing Guidelines. Comparing the long history of caselaw fleshing out the details and mechanics of section 3582(c)(2) with the relatively light amount of caselaw dealing with section 3582(c)(1)(B), and the fact that many courts consider only a few statutes to fall under the express authorization of section 3582(c)(1)(B), *see, e.g.*, *United States v. Wirsing*, 943 F.3d 175, 184 (4th Cir. 2019) ("In pre-First Step Act cases, courts found § 3582(c)(1)(B) to encompass only a few statutes."), we find it unlikely that Congress sought to substantially depart, without saying so, from otherwise settled presumptions regarding the resentencing context. Thus, it is helpful to look at the parallels between section 3582(c)(2) and the First Step Act to resolve background questions regarding the mechanics of the First Step Act like the question presented by Martin's motion. Examining the cases interpreting section 3582(c)(2) and presuming that Congress legislated section 404(b) with a recognition of that resentencing regime supports that Congress did not seek to implicitly grant courts authority to modify sentences that have already been served.

30

For example, if the First Step Act permitted retroactive modification of sentences that had already been served, it would permit a defendant to obtain substantially more relief than if he had moved for a sentencing reduction pursuant to a change in the relevant Sentencing Guidelines. Courts considering motions made under § 3582(c)(2) are bound to follow the Guidelines' policy statements, including § 1B1.10(b)(2)(C)'s prohibition on reducing terms of imprisonment to less-than time served. *Cf., e.g.*, *Llewlyn*, 879 F.3d at 1296, 1298. While motions made under the First Step Act are not subject to those policy statements, we find it difficult to believe that Congress intended to create two disparate resentencing regimes that would have the effect of treating similarly situated inmates differently, and that Congress did so without any express statement conveying such an intent.[14] Presuming Congress's familiarity with these background

---

[14] For example, as noted above and by the district court, several of Martin's codefendants obtained sentencing reductions based on Amendment 782 to the Sentencing Guidelines, which altered the offense level calculations for certain drug offenses under U.S.S.G. § 2D1.1. As also noted above, Martin was ineligible for the same reduction because his applicable offense level was calculated based on a murder committed by his drug trafficking organization. His Guidelines calculation was unaffected by Amendment 782. Thus, the First Step Act does diverge from § 3582(c)(2): Martin would have been eligible for relief under the Act, but was not similarly eligible under a change in the Guidelines. This divergence is because the Act requires only that Martin have been sentenced for a

principles of law, and with cases like *Llewlyn* applying those principles, it would seem a stretch to infer that Congress intended to substantially depart from those settled mechanics without expressing that intent.

To the extent the First Step Act is silent with respect to whether it permits the modification of already-served sentences, and given the strong rejection of such relief under § 3582(c)(2), "it is more likely that Congress was adopting, rather than departing from, established assumptions about how our legal or administrative system works. We will not lightly assume a less conventional meaning absent a clear indication that such a meaning was intended." *Nat. Res. Def. Council, Inc.*, 760 F.3d at 166. This is especially true where § 3582(c)(1)(B) only permits modification of an "*imposed* term of imprisonment" to the extent "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B) (emphasis added). Congress *could* give a court the power to modify *any* imposed term of imprisonment—including one already served—and to thus grant Martin's requested relief. Here, however, it has only expressly permitted courts to "*impose*

---

"covered offense." Despite the divergence—which is clear from section 404(a)—we find no authorization to reduce an already served sentence from the text of section 404(b).

32

a reduced sentence," § 404(b), 132 Stat. 5222 (emphasis added), which more closely mirrors § 3582(c)(2)'s grant of authority to "reduce the term of imprisonment," 18 U.S.C. § 3582(c)(2).

The First Step Act does not authorize district courts to reduce sentences for covered offenses where those sentences have been fully served.

### C. The Relief Authorized by the First Step Act is No Longer Possible for Martin

"[A] case is moot when the issues presented are no longer 'live' or the part[y] lack[s] a legally cognizable interest in the outcome." *See United States v. Suleiman*, 208 F.3d 32, 36 (2d Cir. 2000). For a party to have a cognizable interest in the outcome of a proceeding, a litigant must have suffered an actual injury traceable to the opposing party, and the alleged injury must be likely to be redressed by a favorable judicial decision. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).

While it is true that a criminal case does not "necessarily become moot when [an] [inmate] finishes serving the sentence," it will only remain a live case or controversy if there exists "some concrete and continuing injury or collateral consequence resulting from the conviction." *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (internal quotation marks omitted) (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). Where an inmate challenges his criminal conviction,

33

the Supreme Court "has been willing to presume the existence of collateral consequences sufficient to satisfy the case or controversy requirement," or has at least been willing "to count collateral consequences that are remote and unlikely to occur." *See id.* (emphasis omitted) (quoting *United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999)). However, challenges to sentences do not create a presumption of collateral consequences. *See id.* at 293–94. And a challenge to the length of a completed sentence does not present a live controversy solely by virtue of its collateral effect or consequence on future sentencing. *See Suleiman*, 208 F.3d at 36–37 (discussing Second Circuit precedents following *Spencer*, 523 U.S. at 7, and noting that the contrary holding in *United States v. Rivera*, 164 F.3d 130, 132 (2d Cir. 1999), was no longer good law). For example, "speculation that an individual will receive an enhanced sentence in a future sentencing proceeding in connection with a crime he has not yet committed" is insufficient to demonstrate the presumption of collateral consequences. *Mercurris*, 192 F.3d at 294. Where courts decline to presume the existence of collateral consequences, the inmate seeking to challenge an already-completed sentence "bears the burden of demonstrating some 'concrete and continuing injury' sufficient to create an Article III case or controversy." *Id*. (quoting *Spencer*, 523 U.S. at 7).

34

Martin has not argued that we ought to presume he suffers collateral consequences as a result of the sentencing disparity between powder and crack cocaine caused by having been sentenced prior to the enactment of the Fair Sentencing Act. Instead, he has consistently argued that his continuing imprisonment is the injury for which he seeks redress.[15] For Martin's injury to be redressable, a court must have the power through a favorable judicial decision to reduce Martin's term of imprisonment. But, as we determined above, the First Step Act does not grant a court the authority to modify Martin's term of imprisonment because he has already completed serving the term imposed for Count Seven—the only "covered offense" for which Martin was convicted. Martin's injury is therefore not redressable by a favorable decision under the First Step Act.

---

[15] To the extent Martin seeks reduction of his term of supervised release, we agree that his motion is not moot in that respect. However, such relief is distinct from modification of his term of imprisonment, which has already been served. Martin raised this issue for the first time in his motion for reconsideration. And we cannot say that the district court abused its discretion by denying Martin's request for modification of his term of supervised release. *See Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52–53 (2d Cir. 2012). Furthermore, there is only a remote possibility that the district court would grant such relief on remand based upon the decisions below. *See, e.g.*, *United States v. Key*, 602 F.3d 492, 494 (2d Cir. 2010); *United States v. Blackburn*, 461 F.3d 259, 262–64 (2d Cir. 2006). We therefore decline either to reverse the district court or to remand Martin's request for modification of his term of supervised release.

While it may be tempting to think that the later commencement of Martin's consecutive sentences constitutes a collateral consequence of his term of imprisonment for Count Seven, the fact that Martin remains in prison after serving his sentence is "contingent upon [Martin's having] violat[ed] the law, [being] caught and convicted." *See Spencer*, 523 U.S. at 15 (rejecting argument that a parole revocation could be used to increase sentencing in future proceeding, thus created collateral consequences); *see also Mercurris*, 192 F.3d at 294 (applying *Spencer*'s rejection of similar reasoning to find moot a challenge to the application of a sentencing enhancement). Likewise, the fact that Martin remains incarcerated due to later convictions for non-covered offenses is only due to his later criminal conduct, and is therefore not "collateral" to his original sentence. Martin's later sentences were only affected by his sentence under Count Seven in the sense that he began serving those sentences later in time. Martin's motion is therefore moot; a district court cannot grant the relief he seeks under the First Step Act.

Nevertheless, Martin argues that effectual relief is possible because the imposition of a reduced term of imprisonment under Count Seven would have the effect of "crediting" time towards Martin's subsequent sentences. We disagree that crediting such time would be appropriate here.

36

The practice of crediting time served occurs in several contexts. *See generally United States v. Jackson*, 952 F.3d 492, 497–98 (4th Cir. 2020). Most frequently, "[18 U.S.C.] § 3585(b) reduces a defendant's 'imprisonment' by the amount of time spent in 'official detention' before his sentence [is imposed]. . . ." *Reno v. Koray*, 515 U.S. 50, 56, 59 (1995); *see* 18 U.S.C. § 3585(b). Similarly, defendants are credited for time spent in prison when their term of imprisonment is partially vacated. *See generally United States v. Johnson*, 529 U.S. 53, 54–55 (2000). In that context, the Supreme Court has found that a defendant's term of supervised release is unaffected by excess time spent in prison after a partially vacated conviction. *See id.* at 54.

Perhaps most relevant to Martin's case is when a defendant serving multiple terms of imprisonment has one of his convictions or sentences vacated, and the defendant is then retried and convicted for the same offense. There, the time served under the vacated conviction must be credited towards the later-imposed sentence or another consecutive sentence to avoid a violation of the Double Jeopardy Clause. *See generally North Carolina v. Pearce*, 395 U.S. 712, 718–19 (1969) ("[T]he constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully

37

'credited' in imposing sentence upon a new conviction for the same offense")

*overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 798–803 (1989); *see also, e.g., United States v. Markus*, 603 F.2d 409, 412–14 (2d Cir. 1979) (crediting time served under vacated conviction to consecutive sentence and finding no violation of Double Jeopardy after re-imposition of original sentence to be served consecutively upon reconviction). The Double Jeopardy concern, and the resulting credit that is applied to other sentences, results from the possibility that the defendant is reconvicted and resentenced for the same offense. *See Pearce*, 395 U.S. at 719 ("If, upon a new trial, the defendant is acquitted, there is no way the years he spent in prison can be returned to him. But if he is reconvicted, those years can and must be returned—by subtracting them from whatever new sentence is imposed."); *Miller v. Cox*, 443 F.2d 1019, 1020–21 (4th Cir. 1971) ("[W]here a prisoner serving consecutive sentences on several convictions succeeds in having one of the sentences invalidated after it has been fully or partially served . . . there is no question of multiple punishment for the same offense . . . [still] the state must credit the sentences remaining to be served on the valid convictions with the time served under the voided conviction."). Even if such a defendant is not retried for the same crime, "common sense and

fundamental fairness require" that time spent in prison on a now-voided conviction be credited towards the defendant's remaining valid convictions and sentences. *See Miller*, 443 F.3d at 1021.

Martin argues that effectual relief is possible because the imposition of a reduced sentence under Count Seven would have the effect of having caused him to over-serve his sentence for Count Seven; thus, the additional time he spent in prison may be credited towards the two 12-month terms of imprisonment he continues to serve, and granting his motion would result in his immediate release. To explain, were the district court to have imposed a reduced sentence of 60-months' imprisonment for Count Seven, Martin would have overserved his sentence by 68 months. Martin contends that those 68 months could then be applied towards his two 12-month misdemeanor sentences, thereby causing Martin's immediate release. Martin claims this credit would constitute effectual relief made possible by a favorable judicial decision under the First Step Act.[16]

---

[16] We construe Martin's argument charitably. The argument appearing in his briefing is less nuanced, and relies on the erroneous presumption that the district court was empowered to alter Martin's aggregated sentence for both Counts Seven and Ten. The district court committed the same error in its vacated decision. We note these errors only in an effort to emphasize the precise limits of the First Step Act—which permits modifications of a sentence imposed for a "covered offense," and not the aggregate term

Martin's case is therefore unlike the situations described by *Pearce* and *Miller*, where courts credit time served for one sentence towards another sentence when the underlying conviction or sentence is vacated. In those circumstances, the defendants spent time in prison for reasons that could no longer justify their imprisonment. Because time cannot be paid back to a defendant who is wrongfully imprisoned, courts credit that time towards a defendant's consecutive sentences. Martin does not seek vacatur of his sentence for Count Seven—he seeks the imposition of a reduced sentence. There is no contention that Martin was unlawfully imprisoned for Count Seven, nor is there any contention the sentence imposed by Judge Trager in 2007 was in error at the time it was imposed. In short, Martin served the sentence that was lawfully imposed upon him. The fact that a change in the law that was later made retroactive created a disparity between Martin and similar defendants sentenced several years later does not render the time he served for Count Seven creditable to offenses he committed while in prison.

---

of imprisonment contained in a judgment of conviction including a sentence for a covered offense.

Congress created the disparity between powder and crack cocaine sentencing in 1986 with the Anti-Drug Abuse Act of 1986, and took until 2010 before attempting to remedy that disparity through the Fair Sentencing Act. Congress then took another 8 years before applying the Fair Sentencing Act retroactively to defendants like Martin. The vast majority of defendants who have been disparately sentenced since 1986 will not be entitled to relief under section 404(b) because many of them were released from prison long ago. Martin was imprisoned in 2003, and only remains imprisoned due to his later criminal conduct—none of which is affected by the disparity between powder and crack cocaine sentencing. That Martin remains imprisoned due to later criminal conduct does not create an entitlement to Congressional grace denied to another inmate imprisoned in 2003 who chose not to commit further crimes in prison.

"[T]he fact that our interpretation [of the First Step Act] leaves some [sentencing] disparities in place is hardly an objection" to our conclusion that the statue does not permit the relief Martin requests. *See Johnson*, 961 F.3d at 191. If Congress intended to permit the retroactive modification of a sentence that has already been served, it could have done so. The First Step Act is silent with respect to such relief; a favorable judicial decision under the Act that would have the effect

41

of reducing Martin's term of imprisonment is no longer possible; his motion is moot.

## CONCLUSION

The order and judgment of the district court are **AFFIRMED**. The mandate shall issue on Wednesday, September 9, 2020.

Sack, *Circuit Judge*, dissenting:

I fully agree with the majority insofar as it concludes that Martin's eligibility for relief under the First Step Act turns on "the statute under which [he] was convicted, not [his] actual conduct." *Martin v. United States*, --- F.3d ---, ---, #19-1701 at *15 (2d Cir. 2020) (quoting *United States v. Johnson*, 961 F.3d 181, 187 (2d Cir. 2020)). The majority concludes that the Act — the governing statute — does not permit modification of sentences that already have been served. This conclusion is based on three propositions. I respectfully submit that each of them is faulty and the conclusion based on them therefore mistaken. I therefore respectfully dissent.

1. *First Proposition: The First Step Act Does Not Expressly Permit Modification of an Already-Served Sentence*

As the panel majority notes, a motion pursuant to the First Step Act is filed pursuant to 18 U.S.C. § 3582(c)(1)(B). *Martin*, --- F.3d at ---, #19-1701 at *25 (citing *United States v. Holloway*, 956 F.3d 660, 665–66 (2d Cir. 2020)). Section 3582(c)(1)(B) states that a court may modify "an imposed term of imprisonment to the extent *expressly permitted* by statute . . . ." 18 U.S.C. § 3582(c)(1)(B) (emphasis added). Based on this provision, the majority concludes that the First Step Act (or, the "Act") does not permit modification of a sentence that already

1

has been served because the Act does not explicitly include or refer to already-served sentences.  I think that the majority's reasoning is flawed because it appears in effect to require a statutory enumeration of each and every circumstance in which a court may modify a sentence under the First Step Act before concluding that such a modification is "expressly permit[ted]."  I do not see a basis for such a requirement.  *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) ("[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity.  It demonstrates breadth." (internal quotation marks omitted)).

The provisions of the First Step Act at issue here, section 404, are set out in full in the margin.[1]  To abbreviate, the operative provision — subsection (b) —

---

[1] Application of Fair Sentencing Act.

(a) Definition of covered offense.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) Defendants previously sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) Limitations.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010

2

states that a district court "that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed."  First Step Act, § 404(b), Pub. L. No. 115-391, 132 Stat. 5222 (Dec. 21, 2018) (citation omitted). Then, in subsection (c), "Limitations," Congress expressly enumerated the limits on a district court's authority to reduce a sentence under subsection (b).  There are but two:  First, a court may not provide relief if a defendant already received the benefit of sentencing under the First Step Act; and second, a court may not grant relief if a defendant previously moved for a reduction under the Act and the motion was considered on the merits.  *See id.* at (c).  In addition, subsection (c) makes clear that a district court is not obliged to exercise the power granted in subsection (b) and may decline to do so in an exercise of its discretion.  *See id.*

Section 404 is not ambiguous; it is broad.  It applies when two conditions are met: (1) a court sentenced a defendant for a covered offense, and (2) a court has not considered the merits of the sentence in accordance with the changes

---

(Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act, § 404(b), Pub. L. No. 115-391, 132 Stat. 5222 (Dec. 21, 2018).

3

made by the Fair Sentencing Act. If those conditions are met, then the defendant is eligible for relief and the court has the power to grant that relief. *See Holloway*, 956 F.3d at 664–65 (concluding that "[u]nder the plain language of the First Step Act, [the defendant] was eligible to be considered for a sentence reduction" because he had been sentenced for a covered offense and "is not subject to either of the textual limitations imposed by Section 404(c) of the First Step Act" (internal quotation marks omitted)); *see also United States v. Johnson*, 961 F.3d 181, 191 (2d Cir. 2020) ("It is hardly surprising that Congress would prefer to extend such 'procedural relief' [eligibility] broadly to ensure that *substantive* relief would be available everywhere it is appropriate, safe in the knowledge that district courts would retain discretion to deny relief where it is not appropriate." (emphasis in original)).

"Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980). And "if a statute specifies exceptions to its general application other exceptions not mentioned are excluded." *In re Bellamy*, 962 F.2d 176, 182 (2d Cir. 1992), *abrogated on other grounds*, *Nobelman v. American Sav. Bank*, 508 U.S.

324 (1993) (quoting *United States v. Goldbaum*, 879 F.2d 811, 813 (10th Cir. 1989));

*see also United States v. Aska*, 314 F.3d 75, 78 (2d Cir. 2002) (finding "persuasive

and consistent with Second Circuit law" the principle that if a statute specifies

exceptions to its general application, then exceptions not explicitly mentioned are

excluded).  Accordingly, we are not to read into section 404 a durational or

temporal limit when none exists as a specific limitation in the text; to my

knowledge and assuming it matters, there is no evidence of a contrary legislative

intent.

The panel opinion seems to attempt to avoid this general principle in two

ways.  First, it argues that the word "impose" in the phrase "impose a reduced

sentence" in subsection (b) of the Act implies a temporal limitation on a court's

authority to grant relief under the Act.  Second, the opinion contends that the

body of law applicable to 18 U.S.C. § 3582(c)(2) supports its conclusion.  I doubt

both propositions.

   a.  *The Meaning of "Impose"*

The panel opinion states that the "statute permits only the 'imposition of a

reduced sentence,' from which we cannot also imply an authorization to reduce a

term of imprisonment that has already been served" because the "act of imposing

something means to 'levy or exact,' . . . to 'establish or apply by authority,' or 'bring about as if by force.'" *Martin*, --- F.3d at ---, #19-1701 at *27 (brackets omitted). According to the opinion, "[t]he act of imposing connotes the affirmative placement of a burden or a restriction." *Id.*, --- F.3d at ---, #19-1701 at *28. Thus, the panel opinion says, it "makes little sense to place a 'reduced' burden or restriction where no burden or restriction exists." *Id.*

If the notion that imposition of a sentence requires the placement of a burden were correct, how could district courts "impose" a sentence of time served? They can, of course, even though they are not inflicting a "levy, burden, restriction, or punishment" on the defendant who has already suffered the levy, burden, restriction, or punishment.

Moreover, when we consider the purpose of the First Step Act, it seems extremely doubtful that the imposition of a burden or punishment was its focus. Section 404 of the First Step Act was enacted to "remedy sentencing disparities between defendants sentenced for the same conduct prior to and after the enactment of the Fair Sentencing Act," *Martin*, --- F.3d at ---, #19-1701 at *26, and to make eligible for release "thousands of Americans who have *more than served their time*," *id.* at *26 n.10 (emphasis added) (quoting 164 Cong. Rec. S7764 (Sen.

6

Booker)).  A textbook example of eligibility under the Act would be a defendant

sentenced before August 3, 2010, the effective date of the Fair Sentencing Act, to

a ten-year mandatory minimum sentence for an offense that would trigger only a

five-year mandatory minimum sentence post the Fair Sentencing Act.  This

defendant would have served more than five years by the time the First Step Act

became law and he or she became eligible for a reduced sentence as low as the

new five-year mandatory minimum.  Thus, relief for this defendant — of course,

subject to the district court's discretion to grant relief in the first place — likely

would not include the imposition of a "burden," "restriction," "levy," or

"punishment."  It seems to me that the relief granted would result in the

"imposition" of a reduced sentence that the defendant already had completed

serving, and thus the defendant's immediate release.

> b.  *18 U.S.C. § 3582(c)(2) and Sentencing Guidelines Policy Statements*

The panel majority also contends that we should look to 18 U.S.C. §

3582(c)(2) to understand the scope of authority granted by section 404(b).  The

text of § 3582(c)(2) is set forth in full in the margin.[2]  It permits modification of a

---

[2] "[I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director

7

term of imprisonment when there has been a retroactive change *to the Sentencing Guidelines*. Any such modification must accord with the *Sentencing Guidelines* policy statements. According to the panel majority, "it makes sense" to look to § 3582(c)(2) and the policy statements applicable to it because it is "unlikely that Congress sought to substantially depart, without saying so, from otherwise settled" rules regarding sentencing. *Martin*, --- F.3d at ---, #19-1701 at *28–29.

The majority considers one particular policy statement, or "settled" rule, determinative here: the policy statement, codified at section 1B1.10(b)(2)(C) of the Guidelines. It provides: "In no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." U.S.S.G. § 1B1.10(b)(2)(C). The majority opinion acknowledges that even though this policy statement does *not* apply to motions brought pursuant to § 3582(c)(1)(B), which include motions under the First Step Act, *see Holloway*, 956 F.3d at 665–66, we should import the policy statement into § 3582(c)(1)(B), lest the First Step Act permit defendants to "obtain substantially more relief than if [they] had moved for a sentencing reduction pursuant to a change in the relevant Sentencing

---

of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

Guidelines," *Martin*, --- F.3d at ---, #19-1701 at *30.

But we rejected this approach in *United States v. Holloway*, 956 F.3d 660 (2d Cir. 2020). In 2009, Holloway pleaded guilty to possessing with intent to distribute fifty grams of a mixture containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Because Holloway conceded two prior convictions, he qualified as a career offender under U.S.S.G. § 4B1.1. His guidelines range was 262–327 months' imprisonment and ten years of supervised release. This range was ultimately decreased to 168–210 months' imprisonment because the government moved for a downward departure to account for his cooperation. The court sentenced Holloway to 168 months' imprisonment followed by ten years of supervised release.

In 2019, Holloway moved for a sentence reduction pursuant to section 404 of the First Step Act. The Probation Office and the government both construed the defendant's motion as made under 18 U.S.C. § 3582(c)(2), "meaning that any reduction would need to be consistent with policy statements of the Sentencing Commission." *Holloway*, 956 F.3d at 663. "This included U.S.S.G. § 1B1.10(a)(2), which precludes reductions if the relevant amendment to the Sentencing Guidelines would not have the effect of lowering the defendant's applicable

9

guideline range." *Id.* (internal quotation marks omitted). Because Holloway's

revised guidelines range was equivalent to his original range, the Probation

Office and the government both took the position that he was not eligible for a

reduction. *See* U.S.S.G. § 1B1.10(a)(2). The district court agreed and denied the

motion. We reversed.

On appeal, Holloway argued that the district court erred in considering his

motion under § 3582(c)(2) and thus applying U.S.S.G. § 1B1.10 to conclude that

he was not eligible for a reduction in his term of imprisonment. *See id.* We

agreed. We noted that the district court did not have the "benefit of any

precedential interpretations of the First Step Act," and "understandably treated

Holloway's motion for relief as one brought under 18 U.S.C. § 3582(c)(2) — a

familiar procedural vehicle that has absorbed a considerable portion of district

court dockets in recent years." *Id.* at 665. On this basis, the district court

considered itself bound by U.S.S.G. § 1B1.10. But a "First Step Act motion," we

explained, "is not properly evaluated under 18 U.S.C. § 3582(c)(2)." *Id.*

> That provision applies only if the defendant seeks a
> reduction because he was sentenced "to a term of
> imprisonment based on a sentencing range that has
> subsequently been lowered by the Sentencing
> Commission pursuant to 28 U.S.C. § 994(o)," *i.e.,* a change
> to the Sentencing Guidelines. 18 U.S.C. § 3582(c)(2). But

10

a First Step Act motion is based on the Act's own explicit statutory authorization, rather than on any action of the Sentencing Commission. For this reason, such a motion falls within the scope of § 3582(c)(1)(B), which provides that a "court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." This section contains no requirement that the reduction comport with U.S.S.G. § 1B1.10 or any other policy statement, and thus the defendant's eligibility turns only on the statutory criteria discussed above. [Holloway had been sentenced for a covered offense and was not subject to either of the textual limitations imposed by Section 404(c)]. Accordingly, Holloway was eligible for a reduction in his term of imprisonment, and the district court erred in denying his motion solely on the basis that it believed itself to be bound by U.S.S.G. § 1B1.10.

*Id.* at 665–66 (footnotes omitted).

Thus, we recognized in *Holloway*, as the panel majority does here, that there is an abundance of caselaw on § 3582(c)(2) but very little on § 3582(c)(1)(B). *Compare id.* at 665 (noting that § 3582(c)(2) is "a familiar procedural vehicle that has absorbed a considerable portion of district court dockets in recent years"), *with Martin*, --- F.3d at ---, #19-1701 at *29–30 (relying on the "long history of caselaw fleshing out the details and mechanics of Section 3582(c)(2)" when there is a "relatively light amount of caselaw dealing with Section 3582(c)(1)(B)"). Nevertheless, we did not rely on that abundant caselaw and the policy

11

statements applicable to § 3582(c)(2) because motions made pursuant to the First Step Act are "based on the Act's own explicit statutory authorization, rather than on any action of the Sentencing Commission." *Holloway*, 956 F.3d at 666.

Nor did we require text in the First Step Act to state explicitly Congress's intent to "substantially depart . . . from otherwise settled presumptions regarding the sentencing context," *see Martin*, --- F.3d at ---, #19-1701 at *30, to reach this conclusion. Congress has created two different resentencing regimes: one under § 3582(c)(2) where § 1B1.10(b)(2)(C) expressly applies, and one under § 3582(c)(1)(B) where it expressly does not. The line between them cannot be crossed cavalierly.

Congress acted within the "framework" of the latter regime when it made relief under the Fair Sentencing Act retroactive, *Holloway*, 956 F.3d at 661, because the First Step Act, under the terms of 18 U.S.C. § 3582(c)(1)(B),[3] is a "statute" that "expressly permit[s]" courts to "modify an imposed term of imprisonment." It would be difficult for Congress to indicate any more clearly its intent to "substantially depart" in the First Step Act from the § 3582(c)(2)

---

[3] Section 3582(c)(1)(B) reads in full, "the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."

12

resentencing regime and policy statements applicable thereto without resort to surplusage — a concept we presume Congress to be aware of when it legislates. *Martin*, --- F.3d at ---, #19-1701 at *30 (citing *Tanvir v. Tanzin*, 894 F.3d 449, 463 (2d Cir. 2018)).

Finally, I do not see how the fact that the defendant in *Holloway* was able to "obtain substantially more relief than if he had moved for a sentencing reduction pursuant to a change in the relevant Sentencing Guidelines," *Martin*, --- F.3d at ---, #19-1701 at *30, matters. They are different statutory schemes to be applied differently, likely often producing different results.

For the foregoing reasons, I disagree with the panel majority's reliance on § 3582(c)(2), § 1B1.10(b)(2)(C), and cases interpreting those provisions.

*Eligibility vs. Mootness*

Before moving on, I note one more respect in which the panel's decision appears to depart from *Holloway*. The panel's decision seems to conclude that Martin is not *eligible* for relief because he no longer is serving a sentence for a covered offense. *See Martin, ---* F.3d at ---, #19-1701 at *25–32. But in *Holloway*, we observed that eligibility for relief under the Act turns on two criteria: (1) a sentence imposed for a covered offense, and (2) the absence of both textual

13

limitations that are set forth in section 404(c). *See Holloway*, 956 F.3d at 665–66. We addressed separately the issue of mootness. We noted that Holloway's appeal was not entirely moot, even though he had been released from prison by the time we issued our decision, because on remand, the district court "could still reduce his term of supervised release." *Id.* at 664. By contrast, the court could not grant Holloway effectual relief with respect to his prison sentence. Thus, his request for a reduced term of imprisonment under the Act was moot. *See id.* I think that our analysis in *Holloway*, analyzing the consequences of already having served the sentence for a covered offense separately from eligibility, should guide our analysis here.

"We have previously interpreted Section 3582(c)(1)(B) to require 'that a statute contain an express grant of remedial power, and that this power be broad enough to permit the resentencing in question.'" *Martin*, --- F.3d at ---, #19-1701 at *25 (quoting *United States v. Triestman*, 178 F.3d 624, 629 (2d Cir. 1999)). For the foregoing reasons, I would conclude that the First Step Act contains an express grant of remedial power that authorizes courts to impose a reduced sentence when a defendant was sentenced for a covered offense and the limitations in subsection (c) do not apply, *see Holloway*, 956 F.3d at 665–66, and

14

that this power is broad enough to permit courts to reduce an already-served sentence, *see Yeskey*, 524 U.S. at 212 (1985) ("[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." (internal quotation marks omitted)).

2. *Second Proposition: The First Step Act Does Not Imply an Authorization to Reduce Already-Served Sentences*

To the extent the majority suggests that section 404 of the First Step Act does not imply — nor should it be interpreted to imply — an authorization to reduce an already-served sentence, *see Martin*, --- F.3d at ---, #19-1701 at *28, 30, I disagree. The purpose of section 404 of the First Step Act was to make retroactive the Fair Sentencing Act amendments. "The Fair Sentencing Act marked the culmination of a decades-long effort to address what had been a 100-to-1 disparity between the amounts of crack and powder cocaine required to trigger the mandatory statutory penalties in 21 U.S.C. § 841(b)(1)." *Johnson*, 961 F.3d at 184. The Fair Sentencing Act reduced this disparity to 18-to-1 by increasing the threshold quantities of crack cocaine required to trigger each of § 841(b)(1)'s mandatory statutory penalty ranges. *See id.* at 184, 191.[4] When the

---

[4] The Act reflected the view that although the drug-related crimes associated with crack and powder cocaine were similar, those arrested for crack offenses were mostly young,

15

First Step Act became law, these changes became retroactive, opening the operation of the Fair Sentencing Act for the benefit of defendants sentenced prior to that statute's enactment. Congress thus clearly intended the First Step Act to have a "real and substantial" remedial "effect," *Stove v. INS*, 514 U.S. 386, 397 (1995), for defendants sentenced prior to August 3, 2010 – the date the Fair Sentencing Act became law. Interpreting the Act to prohibit courts from reducing already-served sentences would impair the remedial effect of the Act.[5]

Consider the following:

The First Step Act became law in 2018. It made retroactive the Fair Sentencing Act amendments that changed the quantities that triggered five- and ten-year mandatory minimum sentences. The Fair Sentencing Act became law in 2010. If we interpret the First Step Act to prohibit courts from reducing already-served sentences, then the retroactive change to the quantities that trigger a five-year mandatory minimum sentence would have no remedial effect unless a

---

African American men who faced far harsher penalties than the white and Hispanic suspects who were most often caught with powder cocaine. *See, e.g.,* "The Fair Sentencing Act corrects a long-time wrong in cocaine cases," Wash. Post editorial, Aug. 3, 2010, available at https://www.washingtonpost.com/wp-dyn/content/article/2010/08/02/AR2010080204360.html (last accessed Aug. 26, 2020).

[5] The degree to which it would be impaired is, of course, impossible for us even to estimate.

defendant was sentenced to serve the mandatory minimum consecutive to another sentence. The same is true of the changes related to ten-year mandatory minimum sentences because any defendant who had been in custody pre-trial or pre-conviction for any appreciable amount of time would have completed serving a ten-year sentence by the time the First Step Act became law.[6]

"When Congress acts to amend a statute," or to make it retroactive, "we presume it intends its [action] to have real and substantial effect." *Stone*, 514 U.S. at 397. Interpreting the Act to make relief available principally to those sentenced well above a ten-year mandatory minimum sentence renders its effect less real and less substantial. Such sentences are not driven by the mandatory minimum because the sentencing judge would have concluded that the minimum was insufficient to serve the purposes of sentencing. Therefore, a determination that the Act prohibits courts from reducing already-served

---

[6] This Circuit has not addressed whether the First Step Act permits courts to reduce an already-served sentence for a covered offense when that sentence is one component of a longer sentence for two or more counts of conviction secured at the same time, e.g., a fifteen-year total sentence where the defendant was sentenced to a ten-year mandatory minimum sentence for a covered offense in violation of 21 U.S.C. § 841(b) and a consecutive five-year mandatory minimum sentence for a violation of 18 U.S.C. § 924(c). For this reason, I focus here on the effect of hypothetical sentences for a single count in violation of § 841(b), the statutory penalties for which were amended by sections 2 or 3 of the Fair Sentencing Act.

sentences would limit availability of relief principally to those least likely to receive a benefit from changes to the mandatory minimums. If this is what Congress had intended, it seems to me that "there would have been no reason for Congress to have included," *Stone*, 514 U.S. at 397, section 404 in the First Step Act.

I think that this context of how the Act functions — or would function in practice — supports interpreting the Act broadly, as we did in *Johnson* and as it seems to me it is written, to extend eligibility to defendants who were sentenced to five- or ten-year mandatory minimum sentences prior to August 3, 2010 for what are now "covered offenses" and remain incarcerated today on other or subsequent counts of conviction. *See Johnson*, 961 F.3d at 192 n.10 ("[W]e find it perfectly consistent with the purposes of the First Step Act that Congress would have extended Section 404 *eligibility* to *all* defendants sentenced under Section 841(b)(1)'s pre-Fair Sentencing Act crack cocaine penalties, while relying on judicial discretion to solve the more complex and individualized problem of which such defendants should ultimately receive sentencing relief." (emphases in original)).

18

3. *Third Proposition: Administrative Aggregation Does Not Authorize Relief for Already-Served Sentences*

The panel decision relies repeatedly on references to 18 U.S.C. § 3584(c), which provides that consecutive or concurrent terms of imprisonment "shall be treated for administrative purposes as a single, aggregate term of imprisonment."[7] According to the opinion, this provision is further proof that the First Step Act does not permit reduction of an already-served sentence. I think this conclusion problematic for several reasons.

First, the panel decision bases its conclusion in part on *United States v. Llewlyn*, 879 F.3d 1291 (11th Cir. 2018), which concerned a motion for a reduction under § 3582(c)(2). In *Llewlyn*, the defendant already had served the first of two separately imposed consecutive sentences when he moved to reduce the first sentence under § 3582(c)(2). Because the motion was brought under § 3582(c)(2), the policy statement in § 1B1.10(b)(2)(C) applied. Therefore, the court could not reduce the first sentence because doing so would impermissibly reduce the sentence to "less than the term of imprisonment the defendant ha[d] already served." U.S.S.G. § 1B1.10(b)(2)(C). The Eleventh Circuit reached this conclusion

---

[7] 18 U.S.C. § 3584(c) reads: "Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment."

in part by determining that administrative aggregation of the defendant's two consecutive sentences did not turn them into one sentence for purposes of § 3582(c)(2) such that the defendant had not in fact finished serving it and reduction therefore would not violate § 1B1.10(b)(2)(C). *See Llewlyn*, 897 F.3d at 1291. In the case at bar, however, § 1B1.10(b)(2)(C) does not apply, *see Holloway*, 956 F.3d at 665–66, so I do not think that the district court was required to treat Martin's multiple sentences as one to be able to grant relief. In consequence, I think that relying on *Llewlyn* and other similar cases is error.

The panel majority also examines whether § 3584(c) provides "textual support" for the proposition that administrative aggregation authorizes reductions of already-served sentences and concludes that it does not. *Martin*, --- F.3d at ---, #19-1701 at *24. We agree: Of course it does not. Section 3584(c) would be unlikely to include text authorizing a reduction of an already-served sentence when the section does not address, let alone control, resentencing. The question of whether Martin's various sentences are aggregated for administrative purposes under § 3584(c) is irrelevant here — even if Martin himself argues it is relevant and supports his position.

It is 18 U.S.C. § 3582(c) that controls resentencing, and it tells us, *inter alia*,

20

to look to the statutory text that expressly authorizes modification. *See* 18 U.S.C. § 3582(c)(1)(B). Here, such text is included in section 404 of the First Step Act itself. Accordingly, we must look to that text, and only that text, for authorization and any limitations on that authorization to impose a reduced sentence. *See Holloway*, 956 F.3d at 666; *see also United States v. Sutton*, 962 F.3d 979, 985 (7th Cir. 2020) (stating that "any limits on relief that the First Step Act authorizes must come from interpretation of the First Step Act itself").

Finally, the panel majority posits that "statutory authorization to . . . [impose] a reduced sentence for one offense does not permit modification of aggregated sentences where the modifiable sentence is no longer being served. To do so would erroneously treat the sentences as an undivided, aggregated whole." *Martin*, --- F.3d at ---, #19-1701 at *28. This statement seems to me to collapse the concepts of eligibility and scope of relief.

Eligibility under section 404 of the First Step Act turns on only two criteria: (1) the imposition of a sentence for a covered offense, and (2) the absence of both limitations specified expressly in the text of subsection (c). *See Holloway*, 956 F.3d at 665–66. A defendant who has been sentenced for a covered offense is eligible so long as he or she meets the second criteria. There is nothing in the statute that

21

authorizes us to factor in whether the defendant already has served the sentence for the covered offense in determining statutory eligibility.[8]

The scope of relief available is a separate issue. I agree with the majority that neither § 3584(c) nor the First Step Act permits courts to modify aggregated sentences as if they were a single, or "undivided," sentence. *Martin*, --- F.3d at ---, #19-1701 at *28. But I see no basis for concluding that the First Step Act therefore does not permit modification of a sentence for a covered offense, even if that sentence already has been served.[9] Such relief necessarily would affect sentences served consecutively to the sentence for the covered offense.[10] I think it follows that a defendant's total amount of time served in prison, or aggregate sentence, also would be less than if no relief were granted. But this chain of effects is not

---

[8] That such a defendant is eligible does not mean that the defendant is entitled to relief. Mootness may bar the defendant from receiving a reduction of a term of imprisonment or any other component of a sentence. And a court may deny relief in its discretion.

[9] That is, before consideration of mootness and whether that would act as a limitation that would bar relief.

[10] The fact that a reduction would affect a sentence imposed subsequent to the sentence for a covered offense, and possibly upset the sentencing court's ex ante expectations of the total amount of time a defendant would serve, does not limit the scope of relief contemplated and authorized by the First Step Act. *Cf. Johnson*, 961 F.3d at 193 ("[W]e can understand the government's frustration that it could not have foreseen [retroactive changes to the statutory penalties, but] it was Congress's decision to confer Section 404 eligibility broadly — and thereby to upset the government's *ex ante* expectations about what sentences certain defendants would serve.").

22

the same thing as reducing or modifying an "aggregate sentence." Nor does it run afoul of the provisions of § 3584(c) or the First Step Act.

The scope of relief available when a defendant moves to reduce an already-served sentence under the First Step Act seems to me to determine whether such a motion is moot. As noted, if a defendant served a sentence for a covered offense and now remains incarcerated on a consecutive sentence, a motion for a reduction of the first sentence is not moot because a court may grant effectual relief. It may reduce the already-served sentence with the effect of accelerating or moving earlier in time the start date — and thus the end date — of the consecutive sentence. If, however, a defendant served a sentence for a covered offense and now is no longer incarcerated, or was released but now is incarcerated for a separate offense, a court cannot grant effectual relief because a reduction in the defendant's term of imprisonment for the covered offense would have no effect on his or her current status — either as a free person or in custody on a sentence that is not consecutive to the sentence for the covered offense and has a start-date certain.

The principal point of departure between my colleagues and me seems to be that, as I see it, it is irrelevant that § 3584(c) does not state that sentences are

23

aggregated for purposes of resentencing or mootness because it is the *fact* of aggregation — more precisely, the fact that sentences are served consecutively — that renders relief possible when an incarcerated defendant moves under the First Step Act to reduce an already-served sentence for a covered offense. Thus, permitting modification of an already-served sentence when the defendant remains incarcerated on a consecutive sentence treats the sentences as they are — consecutive — rather than "as an undivided, aggregated whole." *Martin*, --- F.3d at ---, #19-1701 at *28. The panel opinion characterizes this approach as without legal authority or precedent. *See id.* at ---, #19-1701 at *38–39. I disagree. For the reasons stated, I think that the Act expressly authorizes this approach. And if it is without precedent, then that is no fault of Martin's nor is it surprising because of the Act's youth. But I do not think that it is an adequate ground to deny relief here.

As an aside, I am not entirely convinced that the approach that is mandated here is entirely without precedent – if not directly then by analogy.

First, good time credits function in roughly the same way a sentence reduction would here. When earned, they reduce the length of a sentence such that any consecutive sentences begin — and end — earlier in time. The case at

24

bar is itself an example. The Bureau of Prisons informed the district court that by December 2018, Martin had completed serving his sentence for the covered offense and firearms offense "because of credit for good time," and already was serving the two consecutive 12-month sentences imposed for crimes committed while he was incarcerated. Order dated Apr. 22, 2019, Special App'x at 162.

Second, commutations provide support for reducing already-served sentences when doing so would accelerate the start and end dates of a consecutive sentence. The Constitution grants the President of the United States the "Power to grant Reprieves and Pardons for Offences against the United States, except in Cases of Impeachment." U.S. Const. art. II, § 2, cl. 1. A commutation is such a reprieve that "switch[es] out a greater punishment for a lesser one." *Dennis v. Terris*, 927 F.3d 955, 958 (6th Cir. 2019) (citing *Biddle v. Perovich*, 274 U.S. 480, 487 (1927)).

President Obama used the pardon power to commute the sentences of defendants pursuant to a specific policy initiative. Under the initiative, the Department of Justice prioritized clemency applications from inmates who met several criteria, including the following and arguably most important criterion:

> (1) [The defendant is] currently serving a federal sentence in prison and, by operation of law, likely would have received a

25

> substantially lower sentence if convicted of the same offense(s) today.

*Clemency Initiative*, U.S. DEP'T JUST., https://www.justice.gov/pardon/clemency-initiative (last updated Jan. 13, 2016) [https://perma.cc/S5V2-N4UA]. [11]  I do not, of course, mean to compare the scope of the presidential power to pardon to the

---

[11] The policy provided that the Department of Justice prioritized clemency applications from inmates who met the following factors:

> (1) They are currently serving a federal sentence in prison and, by operation of law, likely would have received a substantially lower sentence if convicted of the same offense(s) today; (2) They are non-violent, low-level offenders without significant ties to large scale criminal organizations, gangs or cartels; (3) They have served at least 10 years of their prison sentence; (4) They do not have a significant criminal history; (5) They have demonstrated good conduct in prison; and (6) They have no history of violence prior to or during their current term of imprisonment.

*Clemency Initiative*, U.S. DEP'T JUST., https://www.justice.gov/pardon/clemency-initiative (last updated Jan. 13, 2016) [https://perma.cc/S5V2-N4UA].

President Obama emphasized the initiative's focus on drug offenders sentenced under "outdated laws that have since changed and are no longer appropriate to accomplish the legitimate goals of sentencing." *See* Barack Obama, *The President's Role in Advancing Criminal Justice Reform*, 130 Harvard L. Rev. 811, 836-38 (2017).  The Department of Justice records of commutations granted by President Obama bear this out.  They show that many defendants who received clemency were convicted of narcotics offenses, the statutory penalties for which were amended by the Fair Sentencing Act.  *See* Commutations Granted by President Barack Obama (2007-2017), U.S. Dep't of Justice, https://www.justice.gov/pardon/obama-commutations (last visited Aug. 21, 2020).  That some recipients of commutations had been convicted of firearms offenses in violation of 18 U.S.C. § 924(c) too, the commutations granted to these recipients appear to be limited to the narcotics offenses.

power granted by the First Step Act. I intend only to note a possible precedent for a reduction of an already-served sentence.

Third, the Fourth Circuit has recognized the approach of retroactively reducing or vacating a term of imprisonment, when doing so is warranted, and shifting accordingly the start and end dates of any sentences imposed consecutive to the one that was reduced or vacated. In *Miller v. Cox*, 443 F.2d 1019 (4th Cir. 1971), the court explained that "where a prisoner serving consecutive sentences on several convictions succeeds in having one of the sentences invalidated after it has been fully or partially served," the state "must credit the sentences remaining to be served on the valid convictions with the time served under the voided conviction." *Miller*, 443 F.2d at 1020. In these circumstances,

> all that [is] involved [is] an adjustment of the administrative records of the prison authorities so that service on the remaining valid sentences would commence at an earlier date. Common sense and fundamental fairness require that under such circumstances the state should not ignore the period of imprisonment under the invalid sentence when an appropriate remedy is so readily available.

*Id.* at 1020–21 (citation omitted).

Here, too, all that is required is an adjustment of the administrative records of the prison authorities so that Martin's two consecutive 12-month sentences began at an earlier date.

\* \* \*

To summarize:  When Congress writes a broad statute, it intends the statute to have breadth.  *See Yeskey*, 524 U.S. at 212 (1985).  Section 404 of the First Step Act is unambiguous and broad.  We are obliged to respect that breadth, which makes relief available when two criteria are met: (1) a court sentenced a defendant for a covered offense, and (2) a court has not considered the merits of the sentence in accordance with the changes made by the Fair Sentencing Act.  *See Holloway*, 956 F.3d 666; *Johnson*, 961 F.3d at 192 n.10.  Whether a defendant currently is serving the sentence he or she seeks to reduce is not one of them.  *Id.*  The availability of relief, however, is not alone determinative of whether such relief will be granted.  A district court also must determine whether a motion is moot and, if not, whether the motion should be granted in the court's discretion.

For the foregoing reasons, I respectfully dissent.  I would conclude that the district court erred in holding that the First Step Act does not permit courts to reduce already-served sentences for covered offenses and that its alternative

28

ruling, denying the motion in its discretion, was based on the same error of law.

Accordingly, I would vacate and remand for further proceedings consistent with this dissent.